**IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE ROSE | : | CASE NO. 1:20-CV-00132 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE: JAMES S. GWIN |
| v. | : | |
| | : | |
| UNIVERSITY HOSPITALS | : | |
| PHYSICIAN SERVICES, INC. | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ON ALL CLAIMS ASSERTED BY PLAINTIFF**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant University Hospitals Physician Services, Inc. ("Defendant") respectfully moves for summary judgment on all claims asserted by Plaintiff Michelle Rose ("Plaintiff"). Plaintiff asserts six claims in her Amended Complaint based on Ohio and federal law. Summary judgment is appropriate on all claims because "there is no genuine dispute as to any material fact and [Defendant] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). This Motion is supported by the attached Memorandum in Support, the deposition of Plaintiff, and the Declaration of Valerie Jaggie.

Respectfully submitted,

*/s/ Donald G. Slezak*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street, Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendant*

# MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

Page

I      Statement Of Adherence To L.R. 7.1                                              1

II.    Brief Statement Of The Issues                                                   1

III.   Summary Of The Argument                                                         2

IV.    Relevant And Undisputed Facts                                                   3

    A.   Plaintiff's General Employment History With Defendant            3

    B.   Plaintiff Was Counseled In July, 2017 By Her Supervisor          4

    C.   Plaintiff's Performance Following The Counseling Did Not Improve  5

    D.   Plaintiff Violated Defendant's Leave Policies And Engaged In     6
        Inappropriate Behavior Which Ultimately Led To Her Discharge

V.     Law And Argument                                                                8

    A.   Standard Of Review                                               8

    B.   Plaintiff's "Harassment" Claim Fails As A Matter Of Law          9

    C.   Plaintiff's Negligent Retention Claim Fails As A Matter Of Law   11

    D.   Plaintiff's Claim For FMLA Interference Fails As A Matter Of Law  12

        1.   The claim fails because it is time-barred                   12

        2.   The claim fails because Plaintiff has no damages            13

        3.   The claim also fails on the merits                          14

    E.   Plaintiff's Claims Disability Discrimination Fail As A Matter Of Law  16

    F.   Plaintiff's Public Shaming Claim Fails As A Matter Of Law        17

    G.   Plaintiff's Claims For Breach Of Contract Fails As A Matter Of Law  18

    H.   Plaintiff's Claims For Pain And Suffering Fails As A Matter Of Law  18

VI.    Conclusion                                                                      19

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                  **<u>Page No.</u>**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)                                              9

*Ask Chems., LP v. Comput Packages, Inc.*, 593 Fed. Appx. 506, 508 (6th Cir. 2014)          9

*Bank of N.Y. Mellon v. Rhiel*, 155 Ohio St. 3d 558, 564                                                  18

*Banks v. Bosch Rexroth Corp.*, 610 Fed. Appx. 519, 525-26 (6th Cir. 2015)                   15

*Burton v. Dutiel*, 5th Dist. Perry No. 14-CA-00024, 2015-Ohio-4134, *90-91
(Oct. 2, 2015)                                                                                                      19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)                                                 8

*Crew v. Advics Mfg. Ohio*, 12th Dist. Warren No. CA2019-05-051, 2020-Ohio-328
(Feb. 3, 2020)                                                                                                     12

*Dewis v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000)                                       17

*Eastman v. Stanley Works*, 180 Ohio App. 3d 844, 853 (10th Dist. 2009)                      19

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08, 118 S. Ct. 2275, 141 L. Ed.
2d 662 (1998)                                                                                                      11

*Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605 (6th Cir. 2002)                           10

*Ferrari v. Ford Motor Co.*, 826 F.3d 885, 894 (6th Cir. 2016)                                      16

*Grindstaff v. Sun Chem. Corp.*, No. 1:09-cv-450, 2010 U.S. Dist. LEXIS
123426, *47-49 (S.D. Ohio Nov. 22, 2010)                                                              15

*Hawkins v. Anheuser-Busch, Inc.,*  517 F.3d 321, 333 (6th Cir. 2008)                          11

*Hoffman v. Professional Medical Team*, 394 F.3d 414, 417 (6th Cir. 2005)                 13

*Kehrner v. Safeco/American States Ins. Co.*, 171 Ohio App.3d 570, 583
(Montgomery Co. 2007)                                                                                         11

*Kesler v. Barris, Scott, Denn & Driker, PLLC*, 482 F.Supp.2d 886, 911 (E.D.
Mich. 2006)                                                                                                          15

**Cases**                                                                              **Page No.**

*Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012)            16

*Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 764 (6th Cir. 2008)                      9

*Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 119 (6th Cir. 2003)             10

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L. Ed.
2d 115 (1988)                                                                             13

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 600 (6th Cir. 2007)            10

*MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F.Supp. 3d 731, 736
(N.D. Ohio 2015)                                                                           9

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000)                10

*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998)                            10

*Rajeh v. Steel City Corp.*, 157 Ohio App. 3d 722, 735 (Ohio Ct. App. 2004)             12

*Ray v. AT&T Mobility LLC*, No. 2:17-cv-68, 2020 U.S. Dist. LEXIS 20361, *28
(E.D. KY Feb. 3, 2020)                                                                    15

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)                          8

*Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)                                     13

*Rinehart v. PNC Bank, N.A.*, 219 F.Supp.3d 682, 694 (S.D. Ohio 2016)                    10

*Robinson v. Dixie Consumer Prods.*, No. 5:09-242, 2011 U.S. Dist. LEXIS 40796,
*21-23 (E.D. KY Apr. 13, 2011)                                                            17

*Soehner v. Time Warner Cable, Inc.*, No. 1:08-cv-166, 2009 U.S. Dist. LEXIS 1
06619, *12-13 (S.D. Ohio Nov. 16, 2009)                                                   15

*Sokolnicki v. Cingular Wireless, LLC*, No. 05-74110, 2007 U.S. Dist. LEXIS
37093, *19-20 (E.D. Mich. May 22, 2007)                                                   17

*Spurlock v. Postmaster Gen.*, 19 Fed. Appx. 338, 340 (6th Cir. 2001)                    13

*Sygula v. Regency Hosp. of Cleveland East*, 8th Dist. Cuyahoga No. 103436,
2016-Ohio-2843, *35-36 (May, 5, 2016)                                                     12

| **Cases** | **Page No.** |
|---|---|
| *Travers v Cellco P'Ship*, 579 Fed. Appx. 409, 414 (6th Cir. 2014) | 15 |
| *Wade v. Austin Pear State Univ.*, No. 3:05-0076, 2008 U.S. Dist. LEXIS 3339, *69 (M.D. Tenn. Jan. 16, 2008) | 9 |
| *Welling v. Weinfeld*, 113 Ohio St.3d 464, 467 (Ohio 2007) | 18 |
| *Wells v. Aust.*, 8th Dist. Cuyahoga No. 65325, 1994 Ohio App. LEXIS 2169, *5 (May 19, 1994) | 18 |
| *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008) | 17 |
| *Whitfield v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011) | 16 |

**Statutes**

| | |
|---|---|
| Fed.R.Civ.P. 56(a) | 9 |
| 29 USCS § 2617(a)(1) | 14 |

I.      **STATEMENT OF ADHERENCE TO L.R. 7.1**

This Memorandum in Support adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio.  The present action has been assigned to the standard case management track.

II.     **BRIEF STATEMENT OF THE ISSUES**

A.      Whether  summary judgment should be granted in favor of Defendant on Plaintiff's harassment claim.

B.      Whether  summary judgment should be granted in favor of Defendant on Plaintiff's negligence claim.

C.      Whether  summary judgment should be granted in favor of Defendant on Plaintiff's FMLA interference claim.

D.      Whether  summary judgment should be granted in favor of Defendant on Plaintiff's disability discrimination claim.

E.      Whether  summary judgment should be granted in favor of Defendant on Plaintiff's disability discrimination claim.

F.      Whether  summary judgment should be granted in favor of Defendant on Plaintiff's public shaming claim.

G.      Whether  summary judgment should be granted in favor of Defendant on Plaintiff's breach of contract claim.

H.      Whether  summary judgment should be granted in favor of Defendant on Plaintiff's pain and suffering claim.

III.    <u>**SUMMARY OF THE ARGUMENT**</u>

Plaintiff Michelle Rose ("Plaintiff") was employed by Defendant University Hospitals Physician Services, Inc. ("Defendant") for thirteen years.  (Deposition of Plaintiff at 33 ("Dep. Plaintiff at __") at 31).[1]   Plaintiff admits that she was "very happy" with her employment.  (Dep. Plaintiff at 39).  In fact, Plaintiff never raised any complaints with the human resources department and she was not given written disciplined for the first twelve years of her employment.  (Dep. Plaintiff at 39 and 41-42).

Plaintiff is currently disabled and receiving SSDI benefits.  (Dep. Plaintiff at 12).  In fact, Plaintiff's disability status began on November 27, 2017, one month before Plaintiff's discharge.  (Dep. Plaintiff at 13).  Plaintiff admits that she has been medically unable to perform the duties of her former position with Defendant since November 27, 2017.  (Dep. Plaintiff at 14).

Plaintiff admits that she was aware of Defendant's policy that required her to treat her co-workers with respect.  (Dep. Plaintiff at 49-50 and Ex. 10).  Plaintiff was discharged in 2017 due to Plaintiff's intentional violation of this policy and her supervisor's directives.  (Dep. Plaintiff at Ex. 17; Declaration of Valerie Jaggie (hereinafter "Dec. Jaggie at __") at 33).[2]   In July, 2017, Defendant counseled Plaintiff on reporting all hours worked, her communication style, and properly raising work issues with management.  (Dec. Jaggie at 14-15 and Ex. 2; Dep. Plaintiff at 55).  The counseling was not successful and Plaintiff was given a Final Written Warning in October, 2017 due to continuing communication issues.  (Dep. Plaintiff at Ex. 11).  The Final Written Warning advised Plaintiff that she had to "conduct herself in a professional manner" or she would be subject to termination.  (Dep. Plaintiff at Ex. 11).

---

[1] Cited pages from the deposition of Plaintiff are attached hereto as Exhibit 1.
[2] A copy of Valerie Jaggie's declaration is attached hereto as Exhibit 2.

Plaintiff was on an approved FMLA leave at the time of her discharge.  (Dep. Plaintiff at Ex. 2).  Plaintiff admits that she was told by the physician worked for and her supervisor not to work during the leave of absence.  (Dep. Plaintiff at 92-93 and 96).  Despite the directive, Plaintiff texted, emailed and phoned her co-workers regarding work issues.  (Dep. Plaintiff at 96-98 and Ex. 17).  Plaintiff's co-worker communications included demands that the office staff provide her with their confidential passwords and demands not to tell Plaintiff's supervisor.  (Dep. Plaintiff at Exs. 17-19).  Plaintiff was discharged for violating the Final Written Warning and her supervisor's directives.  (Dep. Plaintiff at Ex. 17).

This lawsuit is not alleging "wrongful termination" and Plaintiff is not seeking lost wages due to her SSDI status.  (Dep. Plaintiff at 19 and Ex. 1).  As set forth below, summary judgment should be granted in favor of Defendant on all claims asserted because there are no genuine issues of material facts for trial and Defendant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Accordingly, this Motion should be granted, this matter terminated, and judgment should be entered in favor of Defendant.

## IV.  RELEVANT AND UNDISPUTED FACTS

### A.  Plaintiff's General Employment History With Defendant.

Plaintiff was employed by Defendant from 2004 until December 20, 2017. (Dep. Plaintiff at 31).  Plaintiff is currently not working because she is receiving SSDI benefits. (Dep. Plaintiff at 12).  Plaintiff's initial disability date is November 27, 2017, the date that she had knee surgery while still employed by Defendant.  (Dep. Plaintiff at 13).  Plaintiff admits that she has been unable to perform the duties and responsibilities of her former position with Defendant due to her disability since November 27, 2017.  (Dep. Plaintiff at 14).

As a long-term employee, Plaintiff was familiar with Defendant's policies. (Dep. Plaintiff at 43). Relevant to this Motion, Plaintiff was familiar with Defendant's harassment, discrimination, and professional behavior policies. (Dep. Plaintiff at 44-45, 49-50, and Exs. 5 and 10). In addition, Plaintiff admits that she was familiar with Defendant's FMLA policy and that she utilized FMLA leave on a number of occasions during her employment. (Dep. Plaintiff at 39, 44, 51-52 and 88-90, and Ex. 4).

Plaintiff admits that she was "very happy" during her employment. (Dep. Plaintiff at 39). Consistent with her happiness, Plaintiff never filed a complaint with the human resources department. (Dep. Plaintiff at 39). Finally, until 2017, Plaintiff does not recall ever receiving any written discipline. (Dep. Plaintiff at 41-42).

Plaintiff was in management with Defendant for the last seven years of her employment. (Dep. Plaintiff at 40). At the time of her discharge, Plaintiff's position was Practice Lead. (Dep. Plaintiff at 34). Due to a change in federal law, Plaintiff was paid hourly as a Practice Lead. (Dep. Plaintiff at 38). As Practice Lead, Plaintiff was responsible for handling a variety of administrative tasks for Dr. Kent Knauer's medical office. (Dep. Plaintiff at 35-37). Plaintiff's supervisor at all times relevant to the Amended Complaint was Cynthia Clark. (Dep. Plaintiff at 35).

B.    **Plaintiff Was Counseled In July, 2017 By Her Supervisor.**

A continuing issue with Plaintiff's performance was the tone, style, and manner of her communications with her co-workers, peers and managers. (Dec. Jaggie at 13). In July, 2017, Plaintiff's supervisor worked with the human resources department to counsel Plaintiff on a variety of issues. (Dec. Jaggie at 14-15 and Ex. 2). The need for the communication resulted

from employees from other departments raising Plaintiff's communication issues to Plaintiff's supervisor.  (Dec. Jaggie at Ex. 2).

The July, 2017 counseling addressed the chain of command, communication style, and the need to report all hours worked.  (Dec. Jaggie at Ex. 2).  Plaintiff admits that her supervisor advised her that "sometimes [her] emails come across the wrong way."  (Dep. Plaintiff at 55).  Plaintiff further recalls that her supervisor told her to "stop" before sending an email to consider "how the other person may read it. . . ."  (Dep. Plaintiff at 55).

Consistent with the counseling, HR-63 requires "professional behavior."  (Dep. Plaintiff at Ex. 10).  Plaintiff admits that she "[a]bsolutely" understood that she had to treat her co-workers with respect.  (Dep. Plaintiff at 50).  Consistent with this respect, Plaintiff admits that Dr. Knauer expected her to act professionally when communicating with her co-workers on behalf of Dr. Knauer's practice.  (Dep. Plaintiff at 56).

### C.    Plaintiff's Performance Following The Counseling Did Not Improve.

Due to the many employees at University Hospitals Health Systems, Inc. ("UHHS"), policy GM-69 was implemented to govern the execution of contracts.  (Dep. Plaintiff at Ex. 9; Dec. Jaggie at 4).  Plaintiff violated GM-69 in August, 2017 by executing a one year contract with a  transcription service.  (Dep. Plaintiff at 63-64 and Ex. 12; Dec. Jaggie at 21).

Shortly thereafter, Defendant announced that the Allergy Department would be changing its billing and scheduling software.  (Dep. Plaintiff at 57; Dec. Jaggie at 22).  Dr. Knauer's practice was in the Allergy Department and Plaintiff objected to the timing of the change.  (Dep. Plaintiff at 57).  Plaintiff was upset because no one consulted with her on the date the change would be implemented.  (Dep. Plaintiff at 57).

Plaintiff raised objections with her supervisor, the department, the IT Department, and a variety of other management employees.  (Dep. Plaintiff at Ex. 15).  The IT Department reported that Plaintiff was on the "warpath."  (Dep. Plaintiff at Ex. 15, pg. 11).  Plaintiff demanded a meeting with a "heavyweight" to discuss the issues.  (Dep. Plaintiff at Ex. 15, pg. 11).  The IT Department advised Plaintiff's supervisor that Plaintiff's "barrage" e-mails and phone calls are "time-consuming and inflammatory."  (Dep. Plaintiff at Ex. 15, pg. 33).  Plaintiff's objections included informing multiple managers that the software changes will require her to discharge one and potentially two employees.  (Dep. Plaintiff at Ex. 15, pg. 3).  Finally, Plaintiff's objections included multiple threats to take her objections to UHHS' Chief Executive Officer.  (Dep. Plaintiff at Ex. 14, pg. 2).

Due to the contract and the inappropriate objections to the software implementation, Plaintiff was placed on a Final Written Warning on October 19, 2017.  (Dep. Plaintiff at Ex. 11).  The Warning addressed Plaintiff's "aggressive communication style," threats and actions taken to jump the chain of command, the IT Department communications, and the inappropriate execution of the contract.  (Dep. Plaintiff at Ex. 11).  The Warning advised Plaintiff that she had to "conduct herself in a professional manner."  (Dep. Plaintiff at Ex. 11).  Finally, Plaintiff was advised that the failure to comply with the Warning would "result in termination."  (Dep. Plaintiff at Ex. 11).

### D.  Plaintiff Violated Defendant's Leave Policies And Engaged In Inappropriate Behavior Which Ultimately Led To Her Discharge.

Following the Final Written Warning, Plaintiff was approved for two FMLA leaves. (Dep. Plaintiff at 88-89 and 89-91).  Plaintiff's first leave was an intermittent for her father who was in the hospital.  (Dep. Plaintiff at 88-89).  Plaintiff then went on an FMLA leave of absence due to her knee surgery beginning on November 27, 2017.  (Dep. Plaintiff at 89).

Plaintiff was ultimately discharged on December 20, 2017. (Dec. Jaggie at 23; Dep. Plaintiff at 88 and Exhibit 17).  The discharge took place while Plaintiff was on a leave of absence. (Dec. Jaggie at 27).  Plaintiff admits that Dr. Knauer and her supervisor directed her not to work during her FMLA leave.  (Dep. Plaintiff at 92-93, 96, and Ex. 16).  Despite the directive, Plaintiff texted, called and emailed her co-workers regarding work.  (Dep. Plaintiff at 96-97, 98, and 99-100).  Plaintiff's communications included requests for her staff to send her their login and password information for a variety of computer systems.  (Dep. Plaintiff at 97-98 and Ex. 19).  The communications asked the staff not to advise Plaintiff's supervisor and to email the information to Plaintiff's personal email address.  (Dep. Plaintiff at Exs. 18-19).  The staff reported to Plaintiff's supervisor that Plaintiff's communications were "crazy" and made them "nervous."  (Dep. Plaintiff at Ex. 19).  The craziness was, in part, due to Plaintiff calling the office from a blocked phone number to speak with one of the employees. (Dep. Plaintiff at Exhibit 17).  While on the call, Plaintiff yelled at the co-worker for saying her name aloud and questioned the employee as to where they had been that day. (Dep. Plaintiff at Exhibit 17).

Based on Plaintiff's violation of the Final Written Warning, Defendant's policies, and the directives given to Plaintiff, Plaintiff was discharged on December 20, 2017.  (Dep. Plaintiff at Ex. 17).  Due to Plaintiff's leave status, Plaintiff was notified of the discharge over the phone.  (Dec. Jaggie at 27).  Defendant's employees were careful to verify no one could hear the call.  (Dec. Jaggie at 27).  However, the phone call was short, direct and truthful. (Dec. Jaggie at 27-28).  In fact, Plaintiff does not recall the conversation.  (Dep. Plaintiff at 94).

Plaintiff's health insurance was scheduled to end at the end of December, 2017 due to her discharge date.  (Dec. Jaggie at 31).  However, at Plaintiff's request, Defendant extended

the coverage through the end of January, 2018.  (Dec. Jaggie at 31-32).  Plaintiff did not give anything in return for this action.  (Dep. Plaintiff at 112-113; Dec. Jaggie at 31).  Defendant complied with is promise.  (Dec. Jaggie at 32).  However, due to the fact that January was the beginning of the calendar year, Plaintiff's deductible started at zero again; requiring Plaintiff to pay out-of-pocket for certain healthcare in January.  (Dec. Jaggie at 32).

On January 3, 2018, Defendant confirmed the health insurance extension in writing. (Dec. Jaggie at Ex. 2).  In addition, due to the fact that Plaintiff was working during her FMLA leave, Defendant asked Plaintiff to report any hours worked during that FMLA leave.  (Dec. Jaggie at Ex. 2).  In fact, Plaintiff was asked to report any hours of the clock from November, 2016 – when Plaintiff moved to hourly – until her discharge.  (Dec. Jaggie at Ex. 2).  Plaintiff never responded to the email so Defendant paid Plaintiff for hours worked during the FMLA leave based on her computer login information.  (Dec. Jaggie at Ex. 2).

## V.  LAW AND ARGUMENT

### A.  Standard of Review.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  Defendant, as the movant, has the burden of proving that there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  This Court evaluates the evidence in the light most favorable to Plaintiff when reviewing Defendant's motion.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).  However, the mere scintilla of evidence supporting Plaintiff is not sufficient; there must be evidence on which a jury could reasonably find for Plaintiff in order to deny Defendants' motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Based on this Motion, Defendant has satisfied its initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 764 (6th Cir. 2008).  The burden now shifts to Plaintiff who has the burden to "point to evidence that demonstrates that there is a genuine dispute of material fact for trial."  *Ask Chems., LP v. Comput Packages, Inc.*, 593 Fed. Appx. 506, 508 (6th Cir. 2014).  "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'"  *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F.Supp. 3d 731, 736 (N.D. Ohio 2015).

**B.**     **Plaintiff's "Harassment" Claim Fails As A Matter Of Law.**

The first claim for relief in the Amended Complaint is titled "harassment."  (ECF #20, pg. 1).  It is unclear what law the harassment claim is based upon.  (ECF #20, pg. 1).

The claim initially fails because Plaintiff does not allege that the harassment is based on any category protected by federal or Ohio harassment law.  42 U.S.C. § 2000e-2(a)(1) (2012) (Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"); O.R.C. §4112.02(A) (It is unlawful "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment"); *Wade v. Austin Pear State Univ.*, No. 3:05-0076, 2008 U.S. Dist. LEXIS 3339, *69 (M.D. Tenn. Jan. 16, 2008) (Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at intentional discrimination based on a protected category. . . .")(citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75,

80 (1998) and *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000)). Plaintiff's harassment claim fails to allege that the harassment is based on any of these protected categories.

If a protected category is alleged, the claim fails on the merits.  A hostile work environment discrimination plaintiff must establish that: (1) she was a member of a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based upon the employee's protected status, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer bears responsibility for the harassment. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 600 (6th Cir. 2007) (quoting *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605 (6th Cir. 2002)); *Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 119 (6th Cir. 2003).

Plaintiff testified that she was "very happy" during her employment.  (Dep. Plaintiff at 39). The alleged harassment in this case apparently arises from two events.  The first event is Defendant's request in July, 2017 that Plaintiff report all hours worked.  (ECF #20, pg. 1); (Dec. Jaggie at 14-15 and Ex. 2).  The second event apparently arises out of Plaintiff making a statement about suicide in the workplace and being placed on leave to verify her health and safety.  (Dep. Plaintiff at 15).  Before returning to work following the suicide comment, Plaintiff alleges that she was required to visit with a physician and get a release to return to work.  (Dep. Plaintiff at 15).  These allegations simply do not meet the severe or pervasive standard.  *Rinehart v. PNC Bank, N.A.,* 219 F.Supp.3d 682, 694 (S.D. Ohio 2016) ("In order for harassment to be actionable, the workplace must be 'permeated with 'discriminatory intimidation, ridicule or insult' sufficiently severe or pervasive to alter the conditions of employment.'" *citing Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 333 (6th Cir. 2008)).

Finally, Defendant maintains harassment and discrimination policies.  (Dep. Plaintiff at Ex. 5).  Plaintiff admitted that she was aware of the policy and knew the rules while employed by Defendant.   (Dep. Plaintiff at 44-45).   However, Plaintiff never presented a complaint of harassment or discrimination to Defendant.  (Dep. Plaintiff at 39; Dec. Jaggie at 7).  Based on these admissions, Plaintiff cannot prove that the employer bears responsibility for the harassment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).  Accordingly, summary judgment should be granted in favor of Defendant on Plaintiff's harassment claim.

    C.     **Plaintiff's Negligent Retention Claim Fails As A Matter Of Law.**

Plaintiff's second cause of action alleges negligent hiring, retention and supervision. (ECF #20, pg. 2).  As with the harassment claim, this claim similarly sets forth workplace gripes. (ECF #20, pg. 2).

The elements of a claim for negligent hiring, supervision, and retention are: (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's knowledge of the employee's incompetence, (4) the employee's act or omission causing the plaintiff's injuries, and (5) a causal link between the employer's negligence in hiring, supervising, and retaining and the plaintiff's injuries.  *Kehrner v. Safeco/American States Ins. Co.*, 171 Ohio App.3d 570, 583 (Montgomery Co. 2007).  Plaintiff's claim does not allege which of Defendant's employees took these actions.  (ECF #20, pg. 2).

The claim initially fails because Defendant participates in the workers' compensation program.  (Dec. Jaggie at 5).  Ohio's Workers' Compensation program bars employees from asserting negligence claims against their employer.  *See* O.R.C. 4123.74 (granting immunity to employers complying with the Workers' Compensation program for injuries arising out of an

employee's employment); *see also Crew v. Advics Mfg, Ohio*, 12th Dist. Warren No. CA2019-05-051, 2020-Ohio-328 (Feb. 3, 2020) (employer's participation and compliance with Workers' Compensation program precluded employee's negligence claim); *Rajeh v. Steel City Corp.*, 157 Ohio App. 3d 722, 735 (Ohio Ct. App. 2004) (employer's participation on workers' compensation precludes negligence claims).

Even if the claim does not fail due to the worker' compensation bar, it fails on the merits. The claim addresses nothing more than workplace disputes between Plaintiff and management. (ECF #20, pg. 2).  Plaintiff simply does not provide any evidence of Defendant's negligence, the identity of the allegedly negligent or incompetent employee, and fails to show how Plaintiff was harmed. *See Sygula v. Regency Hosp. of Cleveland East*, 8th Dist. Cuyahoga No. 103436, 2016-Ohio-2843, *35-36 (May, 5, 2016) (claim requires employee's incompetence, harm to plaintiff, and defendant's negligence).  Accordingly, summary judgment should be granted in favor of Defendant on Plaintiff's negligence claim.

### D.    Plaintiff's Claim For FMLA Interference Fails As A Matter Of Law.

The third claim asserted in Plaintiff's Amended Complaint is FMLA interference.  (ECF #20, pg. 2).  The claim alleges that Plaintiff had to work during an approved FMLA leave.  (ECF #20, pg. 2).  Judgment should be entered in favor of Defendant on this claim for three reasons.

#### 1.    The claim fails because it is time-barred.

Plaintiff's Complaint was filed on December 20, 2019.  (ECF #1-2).  The FMLA has its own statute of limitations, which provides that an FMLA action must be brought within two years "after the date of the last event constituting the alleged violation for which the action is brought."  29 U.S.C. § 2617(c)(1).  If the plaintiff asserts a willful violation, the statute of limitations extends to three years. 29 U.S.C. § 2617(c)(2).

The FMLA does not define "willful," but the Sixth Circuit has held that "[a]n employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir.2004).  Mere negligence is not enough. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L. Ed. 2d 115 (1988) ("The word 'willful'. . . is generally understood to refer to conduct that is not merely negligent."). The plaintiff bears the burden of proving a willful violation. *Hoffman v. Professional Medical Team*, 394 F.3d 414, 417 (6th Cir. 2005).

Plaintiff's Amended Complaint does not allege a willful violation.  (ECF #20, pg. 2). More importantly, Plaintiff was explicitly advised not to work during her FMLA leave.  (Dep. Plaintiff at 93 and 96).  In addition, Plaintiff was counseled that she was required to report all hours worked off of the clock.  (Dec. Jaggie at Ex. 2).  Finally, Plaintiff was asked to report any work off of the clock, but she failed to report any hours.  (Dec. Jaggie at Ex. 1).  Accordingly, even if alleged, Plaintiff simply cannot prove a willful violation of the FMLA and her FMLA interference claim is time-barred.

### 2.    The claim fails because Plaintiff has no damages.

The claim also fails because Plaintiff's Amended Complaint confirms that Plaintiff is not seeking "back pay and or future pay."  (ECF #20, pg. 4).  The FMLA does not award nominal damages.  *See Spurlock v. Postmaster Gen.*, 19 Fed. Appx. 338, 340 (6th Cir. 2001) ("[u]nder the FMLA, nominal damages may not be awarded. . .").

Under 29 USCS § 2617, Plaintiff must prove that she lost "wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation."  29 USCS § 2617(a)(1).  Plaintiff is seeking payments for credit card debt and payment for the loss

of her house.  (Dep. Plaintiff at 19).  When asked to report any hours worked off of the clock by Defendant, Plaintiff never responded.  (Dec. Jaggie at Ex. 1).  Finally, Defendant compensated Plaintiff for the time that Plaintiff was logged into her computer during her FMLA leave.  (Dec. Jaggie at Ex. 1).  Accordingly, Plaintiff cannot prove damages and her FMLA claim fails as a matter of law.

### 3.     The claim also fails on the merits.

Plaintiff's FMLA interference claim also fails on the merits.  Plaintiff admitted that she was instructed several times to not perform work while on leave. (Dep. Plaintiff at 96 and 98-99).  Nevertheless, Plaintiff admitted that she refused to follow Defendant's directives and, instead, attempted to contact her co-workers with respect to issues related to work. (Dep. Plaintiff at 97-100 and Exhibit 17).  Plaintiff admits that she contacted her co-workers through several different manners of communication. (Dep. Plaintiff at 97-100).  Plaintiff undoubtedly was aware that she was not permitted to work while on leave – she instructed each co-worker to not inform her supervisor about Plaintiff contacting them, asked her co-workers to send all work items to her personal email, and even went so far as to call her office from a blocked phone number. (Dep. Plaintiff at Exhibits 17-20).  Plaintiff's conduct violated Defendant's leave policies and supported the discharge.

Further, assuming, *arguendo*, that Plaintiff was provided with documents or responded to emails while on leave, such work does not interfere with an employee's FMLA leave as a matter of law, particularly where the employee fails to inform the employer that she does not wish to perform the work. *See Soehner v. Time Warner Cable, Inc.*, No. 1:08-cv-166, 2009 U.S. Dist. LEXIS 106619, *12-13 (S.D. Ohio Nov. 16, 2009) (answering calls and attending work-related functions during FMLA leave did not establish that defendant interfered with Plaintiff's FMLA

leave where Plaintiff did not inform defendant that he felt pressured to perform work or otherwise did not wish to work while on leave); *see also Grindstaff v. Sun Chem. Corp.*, No. 1:09-cv-450, 2010 U.S. Dist. LEXIS 123426, *47-49 (S.D. Ohio Nov. 22, 2010) (attending luncheon during FMLA leave where work-related items were discussed was not FMLA interference; the Court also recognized that answering calls during leave was a 'professional courtesy' and not FMLA interference); *Kesler v. Barris, Scott, Denn & Driker, PLLC*, 482 F.Supp.2d 886, 911 (E.D. Mich. 2006) (fielding calls pertaining to work-related questions was not FMLA interference).   Plaintiff provides no evidence that she informed Defendant she did not wish to respond to emails or receive documents while on leave.  Rather, the undisputed evidence shows quite the opposite – that Plaintiff went out of her way to contact co-workers regarding work.  Accordingly, her claim for FMLA leave fails as a matter of law.

Beyond Plaintiff's baseless assertion that she was required to perform work while on FMLA leave – which is false – it is undisputed that Plaintiff was granted all FMLA leave requests in 2017. (Dep. Plaintiff at 50-51).  Accordingly, Plaintiff's claim for FMLA interference fails as a matter of law. *See Travers v Cellco P'Ship*, 579 Fed. Appx. 409, 414 (6th Cir. 2014) (summary judgment appropriate on plaintiff's claim for FMLA interference where defendant granted all of plaintiff's requests for FMLA leave); *see also Banks v. Bosch Rexroth Corp.*, 610 Fed. Appx. 519, 525-26 (6th Cir. 2015) (summary judgment appropriate on claim for FMLA interference where Plaintiff was granted all FMLA leave requests for which she was entitled); *Ray v. AT&T Mobility LLC*, No. 2:17-cv-68, 2020 U.S. Dist. LEXIS 20361, *28 (E.D. KY Feb. 3, 2020) (summary judgment appropriate on claim for FMLA interference where plaintiff was granted all FMLA for which she was entitled).

### E.    Plaintiff's Claims Disability Discrimination Fail As A Matter Of Law.

Plaintiff's fourth claim is disability discrimination.  (ECF #20, pgs. 2-3).  The claim addresses Plaintiff's discharge from employment.  (ECF #20, pgs. 2-3).

Plaintiff received a Final Written Warning due to her "aggressive communication." (Dep. Plaintiff at Ex. 11).  The discharge took place during an FMLA leave.  (Dep. Plaintiff at Ex. 2).  Plaintiff admits that she was told not to work during the FMLA leave.  (Dep. Plaintiff at 93 and 96).  Despite the directives, Plaintiff admittedly texted, phoned and emailed the staff. (Dep. Plaintiff at 96-97, 99, Ex. 17).  The communications caused disruptions and sought personal information from the co-workers.  (Dep. Plaintiff at Exs. 17-19).

The *McDonnell Douglas* burden-shifting analysis is applicable to disability discrimination claims. *Whitfield v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011).  To prove a disability claim, Plaintiff must prove that (1) she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.  *Id.*; *see also Ferrari v. Ford Motor Co.*, 826 F.3d 885, 894 (6th Cir. 2016). Ultimately, the plaintiff has the burden to show that the disability is the but-for cause for the adverse employment decision. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012).

Initially, Plaintiff admits that she could not have returned to work with UH in her former position due to her disability.  (Dep. Plaintiff at 27-28).  Accordingly, due to her SSDI status and admissions, Plaintiff cannot prove that she is otherwise qualified for the position.  Moreover, to be qualified, a plaintiff must prove they are meeting their employer's legitimate expectations. *See Dewis v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000).  Here, Plaintiff was not

meeting Defendant's legitimate expectations due to aggressive and inappropriate behavior, failure to adhere to directives to refrain from working while on leave, and requesting that employees provide password information – all of which violate Defendant's policies and the terms set forth in her final written warning. *See Sokolnicki v. Cingular Wireless, LLC*, No. 05-74110, 2007 U.S. Dist. LEXIS 37093, *19-20 (E.D. Mich. May 22, 2007) (employee could not establish that they were qualified for their position due to violating employer's policies); *see also Robinson v. Dixie Consumer Prods.*, No. 5:09-242, 2011 U.S. Dist. LEXIS 40796, *21-23 (E.D. KY Apr. 13, 2011) (behavior violating employer's policies and prior oral and written warnings precluded employee from meeting employer's legitimate expectations and, therefore, could not prove case for discrimination).

Finally, Plaintiff cannot show that her alleged disability was the "but for" cause of her discipline and discharge nor can she prove pretext. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White*, 533 F.3d at 393. In this case, Plaintiff admits to the knowing violation of Defendant's policies and directives. Accordingly, Plaintiff's disability discrimination claim fails as a matter of law.

### F. Plaintiff's Public Shaming Claim Fails As A Matter Of Law.

Plaintiff's fifth claim is "public shaming." (ECF #20, pg. 3). The claim is apparently based on the phone call notifying Plaintiff of her discharge. (ECF #20, pg. 3).

Plaintiff does not recall the substance of the phone call. (Dep. Plaintiff at 94 ("I don't recall")). Defendant's employees verified no other employees could hear the phone call and verified the substance of the call was true and correct. (Dec. Jaggie at 27-28).

Defendant has found no Ohio authority supporting a public shame claim.  To the extent that Plaintiff's claim for "public shame" can be construed into a claim for invasion of privacy, summary judgment should be granted because Plaintiff has no evidence to support such a claim. *See Welling v. Weinfeld*, 113 Ohio St.3d 464, 467 (Ohio 2007) (claim for invasion of privacy requires intrusion and public disclosure of embarrassing fact).

G. **Plaintiff's Claims For Breach Of Contract Fails As A Matter Of Law.**

Plaintiff's sixth claim is breach of contract.  (ECF #20, pgs. 3-4).  Plaintiff's breach of contract claim is based upon the allegation that Defendant failed to provide her with employer-provided medical insurance for the month following her discharge.  (ECF #20, pgs. 3-4).

Defendant provided Plaintiff with the health insurance.  (Dec. Jaggie at 31-32 and Ex. 1). However, the claim further fails because Plaintiff admits that she provided no consideration to support a contract claim – the extension of benefits was a gift.  (Dep. Plaintiff at 112-113; Dec. Jaggie at 31-32).  Accordingly, Plaintiff's claim for breach of contract fails as a matter of law. *See Wells v. Aust.*, 8th Dist. Cuyahoga  No. 65325, 1994 Ohio App. LEXIS 2169, *5 (May 19, 1994) (breach of contract requires proof of consideration to support the contract); *see also Bank of N.Y Mellon v. Rhiel*, 155 Ohio St. 3d 558, 564 (contract requires consideration).

H. **Plaintiff's Claims For Pain And Suffering Fails As A Matter Of Law.**

Plaintiff's seventh claim is pain and suffering.  (ECF #20, pg. 4).  It appears that this is simply a damage statement, but Defendant will respond so there is no doubt that summary judgment should terminate this matter.

Pain and suffering is an element of some of the claims asserted by Plaintiff, not an independent claim. *Burton v. Dutiel*, 5th Dist. Perry No. 14-CA-00024, 2015-Ohio-4134, *90-91 (Oct. 2, 2015) (pain and suffering is a form of non-economic damages); *see also Eastman v.*

*Stanley Works*, 180 Ohio App. 3d 844, 853 (10th Dist. 2009) (pain and suffering is a form of non-economic damages).  Accordingly, if it is a separate claim, Plaintiff's claim for pain and suffering fails as a matter of law.

## VI.    CONCLUSION

Based on the above-cited arguments and authorities, there are no genuine issues of material fact and summary judgment should be entered in favor of Defendants on all claims asserted by Plaintiff.

<div style="margin-left: 50%;">

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendant*

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 14th day of September 2020, the foregoing was filed through the Court's CM/ECF electronic filing system.  A copy of this filing will be sent via email at Plaintiff's request to the following address which is listed with the Court and which was provided by Plaintiff:

    Michelle Marie Rose
    1690 Lake Crest Drive
    Roaming Shores, Ohio 44084
    Email: mellis4702@aol.com

    *Pro Se Plaintiff*

                                                  */s/ David A. Campbell*
                                                  David A. Campbell (0066494)

                                                  *One of the Attorneys for Defendant*