IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE ROSE | : | CASE NO. 1:20-cv-00132 |
| Plaintiff, | : | |
| | : | JUDGE: JAMES S. GWIN |
| v. | : | |
| UNIVERSITY HOSPITALS PHYSICIANS SERVICES, INC., | : | |
| Defendants. | : | |

### DECLARATION OF VALERIE JAGGIE

I, Valerie Jaggie, being duly cautioned and sworn, hereby declare as follows:

1. I am currently employed by Defendant University Hospitals Physicians Services, Inc., doing business as University Hospitals Physician Network ("Defendant"), as an HR Manager.

2. I held the HR Manager position at all times relevant to the Amended Complaint filed by Michelle Rose ("Plaintiff") in the captioned-lawsuit. I was involved in Plaintiff's final written warning and discharge from employment.

3. This Declaration is based on my personal knowledge.

4. Defendant is a subsidiary of University Hospitals Health System, Inc. ("UHHS") and UHHS' policies are applicable to Defendant's employees. UHHS' FMLA, harassment, discrimination, and other policies apply to Defendant's employees.

5. As with other UHHS affiliated entities, Defendant's employees are eligible for workers' compensation benefits under Ohio law.

6. Defendant's employees have a variety of complaint procedures available to them. Plaintiff was admittedly vocal in how she raised issues during her employment with Defendant, but none of those issues involved alleged harassment or discrimination based on a protected activity or category. Rather, the issues raised by Plaintiff involved management decisions and procedures followed by the practice where Plaintiff was employed.

7. I understand that Plaintiff testified in her deposition that she never complained to the Human Resources Department about FMLA, harassment or discrimination. I agree with this testimony.

8. Plaintiff utilized leaves under the Family and Medical Leave Act (the "FMLA") on a regular basis. Plaintiff was treated the same as all other employees with respect to FMLA leaves – she was expected to give notice, submit an FMLA certification form and return to work once her physician released her to return to work.

9. The only issue that arose during Plaintiff's employment with FMLA leave was that Plaintiff refused to follow clear directives that she should not work during an approved FMLA leave. This issue was addressed in Plaintiff's discharge documentation addressed below. Aside from this serious issue, I was never advised of any concerns that Plaintiff had with FMLA leaves during her employment with Defendant.

10. Following the termination of Plaintiff's employment, on January 3, 2018, I sent an email to Plaintiff regarding her medical insurance and other issues. A true and correct copy of the email is attached as Exhibit 1. Also attached to the email is my letter sent thereafter to Plaintiff providing her with additional pay.

11. My January 3, 2018 email to Plaintiff explicitly asked Plaintiff to provide information regarding hours worked during her FMLA leave. Plaintiff never provided me with any information on this issue.

12. Plaintiff's position with Defendant was Practice Lead. In this position, Plaintiff helped to manage Dr. Kent Knauer's medical practice.

13. A continuing issue with Plaintiff's performance was the tone, style, and manner of her communications with her co-workers, peers and managers. Plaintiff would not follow the chain of command and her communications were oftentimes considered aggressive and abusive by Plaintiff's peers, co-workers, managers and subordinates. Plaintiff recognized and admitted to the issues. In fact, her emails would oftentimes reference her willingness to raise issues and complain in the manner that she saw fit.

14. In July, 2017, I worked with Plaintiff's manager, Cynthia Clark, on a communication to Plaintiff regarding her communication style and other work issues. A true and correct copy of the communication plan is attached hereto as Exhibit 2. The meeting with Plaintiff took place on July 13, 2017.

15. Aside from performance issues, the communication included a notice to Plaintiff that she needed to report hours worked if she was emailing or working outside of work hours. This issue came up multiple times due to Plaintiff's repeated desire to email complaints to co-workers, peers and management after work hours. Plaintiff was told that if she was working after hours, she had a duty to report those hours so she could get paid. All employees are expected to report hours worked.

16. The July, 2017 communication was not successful in correcting Plaintiff's communication and performance issues.

17. Plaintiff was an hourly employee at the time of her discharge. As with all of Defendant's hourly employees, we asked Plaintiff to record all hours worked, even when she was emailing about work after work hours. This directive was for Plaintiff's benefit in order to verify that she was compensated for all hours worked.

18. Plaintiff should not have been working during any FMLA leave. However, if she did perform work during the leave or after work hours, Plaintiff was instructed that she should report those hours so she could get paid. I understand that Plaintiff took these directives as "harassment." To the contrary, these directives were due to Plaintiff's failure to report hours when it is clear that she was emailing about work issues after work hours.

19. Plaintiff was given a Final Written Warning on October 19, 2017. A true and correct copy of the Final Written Warning is attached hereto as Exhibit 3.

20. I reviewed the facts supporting the Final Written Warning and believe that the Final Written Warning correctly sets forth the fact supporting Plaintiff's discipline. Plaintiff was moved to a Final Written Warning because Plaintiff was knowingly violating clear directives and was sending numerous emails that were considered abusive by her co-workers. Plaintiff's supervisor and I received many complaints regarding Plaintiff's communication style.

21. The Final Written Warning addressed two primary issues. The first issue was a contract that Plaintiff purportedly signed on behalf of Defendant. Specifically, in August, 2017, Plaintiff signed a contract on behalf of Defendant with Premier Office Technologies. Plaintiff did not have authority to enter into this contract and her actions violated Defendant's policies and procedures.

22. The second issue again involved Plaintiff's communication issues. Specifically, UHHS announced that Sorian/PCARM, a financial and scheduling system, was going to be implemented in Dr. Knauer's practice in September, 2017. Plaintiff not only objected to the implementation of the systems, but improperly raised her objections in a variety of manners. Plaintiff's peers, co-workers and managers reported the abusive emails and the Final Written Warning was issued.

23. Plaintiff was ultimately discharged on December 20, 2017. The discharge letter and documentation is attached hereto as Exhibit 4.

24. The discharge resulted from additional email communications that were considered abusive by Plaintiff's peers, co-workers and managers. More importantly, Plaintiff was on an approved FMLA leave and told directly that she was not permitted to work during the FMLA leave. Despite the clear directive, Plaintiff continued to communicate with the office staff about work issues. The communications recognized the violation of Defendant's directives – Plaintiff asked her co-workers to keep the communications secret and not to tell Plaintiff's manager. Plaintiff's co-workers reported the issues.

25. Plaintiff's communications to her co-workers went so far as to ask her co-workers to provide her with their passwords and other private information in order to access Defendant's computer systems on their behalves. This request was highly inappropriate and resulted in Plaintiff's co-workers reporting the conduct to Plaintiff's manager.

26. Any employee would have been discharged for Plaintiff's behavior. Plaintiff's conduct was intentional and a knowing violation of the clear directives that were given to Plaintiff by her manager.

27. Because Plaintiff was on a leave of absence at the time, Plaintiff was informed of her discharge via telephone. Both myself and Cynthia Clark participated in the phone call. While a speakerphone was utilized for the phone call, the phone call was placed from Plaintiff's office with the door closed. Plaintiff's office is located down the hall from the front desk and away from staff. There were no staff members around when the call was placed and I am unaware of any staff members who would have been able to hear the phone call.

28. The discharge call was short and uneventful. The discharge grounds were discussed and Plaintiff was advised that she would be receiving the discharge letter. All information discussed on the phone call was truthful.

29. Although the work during the FMLA leave violated Defendant's policies, I inquired with Plaintiff on the amount of time that she worked so she could be paid for the hours. Plaintiff never responded to my request. Accordingly, I checked computer records to determine when Plaintiff was logged into her computer during the leave of absence. Plaintiff was paid for all hours worked based on these records.

30. I understand that Plaintiff alleges that she was on a continuous FMLA leave of absence from October 20, 2017 through November 15, 2017. This is not true. Plaintiff had intermittent FMLA time during this period, but she was also working. Plaintiff never advised me that she was asked to work off of the clock during this time period.

31. Following Plaintiff's discharge, Plaintiff raised her health insurance status with me. Plaintiff requested that Defendant extend her health insurance by one month through January, 2018. As a show of good will, Defendant modified Plaintiff's discharge date to

December 31, 2017 so that Plaintiff's medical insurance would continue through January 31, 2018. Plaintiff gave no consideration for this action.

32. Defendant complied with the agreement to extend the health insurance. I understand that Plaintiff raised issues with her January insurance. Those issues were the result of Plaintiff changing her health insurance to a plan that had a higher deductible. In January, the deductible returned and Plaintiff's health expenses initially fell into the deductible. Accordingly, although health insurance was extended for plaintiff, she had to pay her deductible – this is the same for all employees on the health insurance plan that Plaintiff selected.

33. Plaintiff's discipline and discharge were based upon legitimate, non-discriminatory reasons. Plaintiff knowingly violated Defendant's policies and her supervisor's directives. In addition, Plaintiff's co-workers felt that Plaintiff was abusive and threatening.

34. Any employee who engaged in similar behavior would have been subject to the same level of discipline and discharge.

35. This Declaration is based on my personal knowledge. If necessary, I am prepared to testify to the facts set forth in this Declaration.

I have read the foregoing declaration and I affirm under penalty of perjury under the laws of Ohio and the United States of America that the foregoing is true and accurate to the best of my knowledge, information, and belief.

_____
Valerie Jaggie

9-14-2020
Date

1/25/2018                         RE: Physical Therapy                Ex. 1

**From:** Jaggie, Valerie <Valerie.Jaggie@UHhospitals.org>
**To:** mellis4702 <mellis4702@aol.com>
**Subject:** RE: Physical Therapy
**Date:** Wed, Jan 3, 2018 3:14 pm

*exhibit N*

---

Michelle,

I wanted to follow up with you regarding your open issues. As of this time, we will move your termination date to January 1, 2018, so your benefits will go through the end of January. You will then be sent information regarding Cobra. If you would like to discuss benefits past this point we could speak about a separation agreement with a release of liability for UH.

Please submit a copy the cell phone bills that you are requesting payment for from June – December 2017 by Wednesday, January 10. I will have Cindy work with Drew to allow for an out of policy expense. Also, you mentioned that you have a receipt from a luncheon that you need to be reimbursed for. We will need the receipt in order to see if it is in policy for payment.

Dr. Knauer is missing his new Olympis recorder. Was this collected when you items were retrieved as it was on your desk per Dr. Knauer?

One last item that I need to address is that while you were on your recent continuous medical leave from 11/27 – 12/11, I am aware that you were working against policy. On November 27, 2016, your role was realigned and you were moved to an hourly status. Please let me know how many hours you think you worked off the clock that were not recorded during that time period.

Please provide the needed information by Wednesday, January 10, 2018.

Valerie



*Valerie J. Jaggie*
HR Manager
University Hospitals Physician Services
3605 Warrensville Center Road
Floor 2, 2171
Shaker Heights, OH 44122
216.286.1860 Phone
216.201.4504 Fax
36996 Pager



THE OFFICIAL HEALTH CARE PARTNER OF THE
CLEVELAND BROWNS

---

**From:** mellis4702@aol.com [mailto:mellis4702@aol.com]
**Sent:** Tuesday, January 02, 2018 3:31 PM



*exhibit D*

Payroll Department - Mail Stop 9212
3605 Warrensville Center Road
Shaker Heights, OH 44122

February 2, 2018

Michelle Rose
13232 Painesville Warren Road
Painesville, Ohio 44077

*My leave was not approved see attached.*

Dear Michelle:

Per your request, this letter is to inform you that on January 17, 2018, you received a deposit in the amount of $157.09 into your bank account. This amount reflected hours that you worked while on a continuous medical leave of absence during the timeframe of November 27, 2017 – December 10, 2017. You were compensated for 7.4 hours of worked time. Also, on January 25, 2018, you were paid for .94 hours of Term PTO. Attached are a copies of the Statement of Earnings for your records.

If you have any questions, please contact me at 216-286-8011.

Sincerely,

Ruthann Hill
Payroll Manager

Attachments

*11-27 Day I was in surgery very ill + could not move. or get out of bed for over 2 weeks used a bedpan*

Michelle Rose 7/13/17

**Guiding Principles and Communication**

- Our goal is to help her be successful
- Other departments are coming to me to raise concern about her communication
- When too involve others

**Hierarchy**

- Meet with Cindy (Manager) once a week
    - Keep a list of topics she needs help on
    - Do not cc Cindy on all emails – too many and she should only look at ones that are appropriate
    - If additional or more urgent request is needed than Brian and then Drew

**Clients**

- Who are your clients?
- Patients but also internal employees – importance of communication

**Perception**

- How do you think you are perceived?
- How she is received by her business partners

**FLSA**

- Need to be making sure you are recording time appropriately – a few late emails

Next Steps:

Prepare a Performance Improvement Plan around communication

- Would like her input into the plan



# Corrective Action
HRPerf001

## I. EMPLOYEE DATA

| First Name | M.I | Last Name | Employee Number (Enter exactly as in Oracle) |
|---|---|---|---|
| Michelle | M | Rose | 1121389 |

| Position | | | Year |
|---|---|---|---|
| Practice Lead | | | 2017 |

| Entity | Department |
|---|---|
| UHMP | UHMSO Knauer, Kent-60328 |

**(Check one)** ☐ Confirmation of Counseling ☐ Warning ☒ Final Warning/Suspension ☐ Discharge

## II. CIRCUMSTANCES

*Dates of attendance or tardiness occurrences:*

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |

*Describe the circumstances leading to the corrective action:*

Michelle Rose is a Practice Lead and has been with University Hospitals since June 19, 2006. Michelle has been coached over the past two years by her direct manager and most recently in partnership with Human Resources in relation to her professional behavior, communication style, and proper chain of command.

Michelle has continued to have a very aggressive communication style with many departments and employees throughout UH. Recently, the Allergy Department was schedule to launch Sorian/PCARM. Michelle requested a delay for her office due to staffing issues but the launch has already been scheduled and the entire Allergy Department must proceed forward as a group due to business needs. In an email Michelle stated, "We will not move forward at this time with PCARM." Similarly, she sends emails that indicate she expects to speak with the person highest up in authority and that if she does not get her way she will go directly to Mr. Zenty. These communications can be seen as both threatening and insubordinate. Recently she was disruptive in a Soarian training class that caused class leaders to raise concern about her inappropriate behavior. Soarian has been live in the Allergy department for a week and since this time due to numerous aggressive communications, Michelle now needs to go through her direct manager for issues and concern versus contacting the help desk. She has monopolized IT's time directly for her own department needs.

During the month of August 2017, Michelle signed a contract with Premier Office Technologies for transcription services. Michelle is not a Certified Contract Administrator and did not follow the proper procedure to have a contract reviewed or executed. Michelle does not have authority to sign a contract and has violated GM-69. Michelle has gone to multiple sources to request to have the software loaded on her computer. Despite being told that until any product has been reviewed and approved by IT, an appropriate contract and HIPAA Business Associate Agreement have been properly executed this cannot be done. Compliance has tried to work with Michelle on this issue but she is unwilling to be guided to the appropriate next steps.

Due to the numerous concerns listed above and Michelle's aggressive behavior, Michelle is being accelerated to a Final Warning of Corrective Action due to violations in HR-72 and GM-69. She must conduct herself in a professional manner, specifically in regards to the content and tone of her emails, and act within the scope of her job description. Continuation of her unprofessional behavior will result in termination from University Hospitals.

*Please note the policy and procedure violated:*

HR – 72 Corrective Action
GM – 69 Contracts
GOV – 7 Transaction Approval and Authorization

### III. ACTION PLAN

Michelle must continue meet with her weekly regarding issues that arise and how best to navigate through them. She must continue to have thoughtful dialogue with all departments she interacts with.



**University Hospitals**

**Corrective Action**

### IV. EMPLOYEE COMMENTS

Employee will not sign until Direct Boss reviews (DR. Kent Knauer) and also her EEOC attorney who will review this document as well and have a copy on file.

### V. SIGNATURE OF ACKNOWLEDGMENT

I understand that I may contact an HR representative to discuss questions or concerns related to this document including optional complaint resolution steps. Other than in cases of discharge, should the performance concerns outlined in this document continue, additional corrective action up to and including discharge may occur.

| Employee Signature | Date |
|---|---|
| Employee Refused to sign | |
| **Manager Signature** | **Date** |
| [signature] | OCTOBER 19, 2017 |

PLEASE RETURN THIS FORM TO YOUR LOCAL HUMAN RESOURCES DEPARTMENT



**University Hospitals**
Physician Services

December 20, 2017

Michelle Rose
13232 Painesville Warren Road
Painesville, Ohio 44077

Dear Michelle:

This letter is to inform you that as of Wednesday, December 20, 2017, your assignment as a Practice Lead at University Hospitals Medical Practices has been terminated due to violation of your Final Warning Corrective Action.

Please return any property of University Hospitals Medical Practices to the Allergy department at the address below. Specifically UH Badge and Building/Office keys.

    University Hospitals Medical Practices
    9000 Mentor Ave
    UH Mentor Health Center, Ste 103
    Mentor, OH 44060

If you have any questions, please contact me at 440-241-9377.

Sincerely,

*Cindy Clark*

Cindy Clark
Administrator I

# University Hospitals

**Corrective Action**
HRPerf001

---

### I. EMPLOYEE DATA

| First Name | M.I | Last Name | Employee Number (Enter exactly as in Oracle) |
|---|---|---|---|
| Michelle | M | Rose | 1121389 |

| Position | Year |
|---|---|
| Practice Lead | 2017 |

| Entity | Department |
|---|---|
| UHMP | UHMSO Knauer, Kent-60328 |

**(Check one)** ☐ Confirmation of Counseling ☐ Warning ☐ Final Warning/Suspension X Discharge

### II. CIRCUMSTANCES

*Dates of attendance or tardiness occurrences:*

*Describe the circumstances leading to the corrective action:*

Michelle Rose is a Practice Lead and has been with University Hospitals since June 19, 2006. On October 19, 2017, Michelle was placed on a Final Warning for aggressive communication. On December 12 and December 14, 2017, Michelle sent several unprofessional emails to her manager, staff and a co-worker in another department.

Michelle returned back to a continuous leave of absence December 15, 2017. On December 19, 2017, Cindy Clark, Administrator texted Michelle to remind her that she should not be working while on a continuous leave. Michelle then began texting her staff as a group the below messages:
- "Please do not say anything to Cindy about me coming into the office to do anything as all as I am supposed to be on STD. Thank you."
- "I need each of you to call me today and give me your login and passwords for each program Athena, EMR and Soarian. Thank you."
- "Send all communications to be by text please and thank you. Please also let Vida know she can call me as she never texts so tell her to call and not email."
- "Email me the letter you send out for the AR but email it to me at Mellis4702@aol.com thank you"

At 1:50 p.m. Michelle was informed by Cindy that she was not to be on hospital property unless she was receiving medical attention. At 2:22 p.m. Michelle sent another text to her a staff member: "I have texted you, called the office and left you voicemails and you ned to call me."

Cindy then contacted Michelle via phone to remind her that she was on STD and was not supposed to be contacting her staff via email, phone or text. Michelle did not say she wasn't doing that but said she would not contact the staff. Approximately 5 minutes later Michelle called the office from a blocked number and began yelling at one of her staff members because she did not inform her that Cindy was in her office. Michelle stated she needed an appt. When the staff member said her name she became upset with her and she yelled at the staff member again that she was not to say her name as it could be heard in the back office. She again told this employee to call her when she left work for the evening.

Michelle also called another employee from a blocked number and asked her, "well, where have you been?" The staff are very nervous and concerned about her behavior for their own safety. After the above communications, Michelle had a staff member schedule her and appointment to see the Physician on Wednesday, December 20, 2017. She stated when she arrives in the office on December 20, she was going to tell the staff what duties they were to do when she was out. Michelle called from a private number on the morning of December 20, to cancel the appointment.

Michelle has violated HR – 63 for Professional Behavior, HR- 72 Corrective Action and IS-9 Password, Creation and Revision. Due to the continued aggressive and threatening behavior and violation of UH Password, Michelle's employment is being terminated effective immediately.

*Please note the policy and procedure violated:*

HR – 72 Corrective Action

HR – 63 Professional Behavior

    2.1.2. Demeaning, intimidating or abusive behavior.
    2.1.6. Outbursts of rage or violent temper.

IS-9 Password, Creation and Revision

All individuals who access UH IT Systems, including physicians, workforce members, contractors, vendors and researchers, adhere to UH Information Security standards regardless of the UH business purpose(s) for the access. Passwords are never shared with others or written down in unsecured locations where others may be able to obtain the passwords and use them to access UH IT Systems.

### III. ACTION PLAN

Michelle Rose's employment with University Hospitals has been terminated effectively immediately.


**University Hospitals**

Corrective Action

### IV. EMPLOYEE COMMENTS

## V. SIGNATURE OF ACKNOWLEDGMENT

I understand that I may contact an HR representative to discuss questions or concerns related to this document including optional complaint resolution steps. Other than in cases of discharge, should the performance concerns outlined in this document continue, additional corrective action up to and including discharge may occur.

| Employee Signature | Date |
|---|---|
| Delivered to employee via telephone | 12/20/17 |

| Manager Signature | Date |
|---|---|
| Cynthia L. Clark | 12/20/17 |

**PLEASE RETURN THIS FORM TO YOUR LOCAL HUMAN RESOURCES DEPARTMENT**