Exhibit C

Witness
of
HPP

Terri
Steele-Austin
338

If to Premier: Premier Office Technologies, Inc.

33230 Lakeland Boulevard
Eastlake, Ohio 44095
Telephone No.: (440) 220-3030
Fax No.: (440) 220-3036

Attention:     Tammy P. Gunya, President & CEO

If to Client:   Kent Knauer, M.D.
University Hospitals
9000 Mentor Avenue, Suite #103
Mentor, Ohio 44060
Telephone No.: (440) 974-4114
Fax No.: (440) 974-4118

Attention:     Michelle Rose, Manager, Asthma, Allergy & Immunology

## SECTION 10 - ASSIGNMENT.

This Agreement shall be binding upon and inure to the benefit of the, successors, legal representatives and permitted assigns of each party to the agreement, but no rights, obligations or liabilities of Client or Premier under this Agreement shall be assignable without written consent of the other party. Any assignment or attempt to assign without the prior written consent as set forth herein is void.

## SECTION 11 - ENTIRE AGREEMENT: MODIFICATION.

This Agreement and any attachments hereto set forth the entire understanding of the parties to this Agreement regarding the subject matter hereof and supersede all prior contracts, agreements, arrangements, communications, discussions, representations and warranties, whether oral or written, between the parties regarding the subject matter hereof Any attachments to this Agreement are incorporated in this Agreement and shall be a part of this Agreement for all purposes. This Agreement shall be modified only by a written document signed by the parties.

## SECTION 12 - CONSTRUCTION.

This Agreement shall in all respects be governed by and Construed in accordance with the internal laws of the State of Ohio.

E.1

## SECTION 16 – RAMP-UP PERIOD

There will be a thirty (30) day ramp-up period to be used to monitor and make changes if necessary to the physician lists, templates, procedures, workflow, staffing, etc. to ensure that the TAT requirements are met and possibly to improve them where appropriate.

## SECTION 17 - MISCELLANEOUS

**The contents of this contract shall be kept confidential and cannot be disclosed in any manner whatsoever.**

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the day and date first written above.

**PREMIER OFFICE TECHNOLOGIES, INC.**

By: _Tammy P Gunya_ Digitally signed by Tammy P Gunya
Date: 2017.08.18 11:08:42 -04'00'

Tammy P. Gunya
President & CEO

8-18-17

**KENT KNAUER, M.D., UNIVERSITY HOSPITALS**

By: _Michelle Rose_

Michelle Rose, Manager
Asthma, Allergy & Immunology

1/25/2018                                                                    FW: In SSI Supplier Look Up as an Approved and Active Vendor

From: Rose, Michelle (Manager) (Manager) <Michelle.Rose@UHhospitals.org>
To: MELLIS4702 <MELLIS4702@AOL.COM>
Subject: FW: In SSI Supplier Look Up as an Approved and Active Vendor
Date: Tue, Oct 10, 2017 4:57 pm
Attachments: Image001.png (30K)

*Exhibit E.2*

From: Rose, Michelle (Manager)
Sent: Wednesday, September 13, 2017 4:40 PM
To: Clark, Cindy; Boardman, Brian; Kang, Tia; Ban, Zhenghao; Marko, Deborah; Knauer, Kent
Cc: Rose, Michelle (Manager)
Subject: In SSI Supplier Look Up as an Approved and Active Vendor

*Approved vendor in our Self Service Invoicing Program. We are permitted to utilize any UH Approved Vendors so Dr. Knauer asked me to sign the contract and purchase their equipment.*

| | Active: N | RFQ Only Site: N |
| Purchasing Site: N | | Pay Site: Y |

**114352 - PREMIER OFFICE TECH INC (57 /**

Classification: MEDICAL SERVICES

Active: Y                    RFQ Only Site: N

Purchasing Site: N                    Pay Site: Y

**192965 - PREMIER PAIN CENTERS LLC (1**

Visit us at www.UHhospitals.org.

The enclosed information is STRICTLY CONFIDENTIAL and is intended for the use of the addressee only. University Hospitals and its affiliates disclaim any responsibility for unauthorized disclosure of this information to anyone other than the addressee.

Federal and Ohio law protect patient medical information, including psychiatric_disorders, (H.I.V) test results, A.I.Ds-related conditions, alcohol, and/or drug_dependence or abuse disclosed in this email. Federal regulation (42 CFR Part 2) and Ohio Revised Code section 5122.31 and 3701.243 prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

**Cc:** Knauer, Kent; Rose, Michelle (Manager)
**Subject:** Approved Vendor at UH already has an accoutn set up in SSI for payment
**Importance:** High

Good Afternoon,

Please see the attached and below.  This transcription company is already an approved vendor through UH and has an account in SSI to process payment for invoices.   They serviced all of Richmond hospital and Geneva hospital prior to the AEMR.  The Siedman Cancer Center in Mentor is still using them today.  I do not understand the hold up with anything to get this downloaded onto Dr. Knauer and my laptops.  We have 6 dictations that were done August 28th and have no way to get them to the other dictation company.  This is affecting patient care as these 6 dictations were referrals by other physicians who are waiting on our results.

This  has been help up now for over 3 weeks and again interfering with patient care.

---

### SSI Invoice: Supplier Site (PREMIER OFFICE TECH INC)

Use the filter fields to reduce the list of values.
Supplier Site Code

[                    ]   [ Filter ]

| Supplier Site Code | | S |
|---|---|---|
| **57 ALPHA PARK** | | 5 |

Supplier Sites  1 of 1

**Rose, Michelle (Manager)**

*E.4*

| To: | Rose, Michelle (Manager) |
|---|---|

*ORacle System*
*Supplier Search*

# Supplier Search

**Supplier Name:** premier office

◉ Partial Match  ○ Match from Beginning  ○ Exact Match

help with matching options
help with supplier classifications

Search

To look up a supplier, type the supplier name or partial supplier name and click the search button.

Suppliers displayed in a red font are inactive and unavailable for use at this time. All supplier rows alternate gray and white shading.

| 114352 - PREMIER OFFICE TECH INC (57 ALPHA PARK) | | 57 ALPHA PARK HIGHLAND HEIGHTS OH 44143 |
|---|---|---|
| Classification: MEDICAL SERVICES | | |
| Active: Y | RFQ Only Site: N | |
| Purchasing Site: N | Pay Site: Y | |



**Rose, Michelle (Manager)**

| Purchasing Site: N | Pay Site: Y | |
|---|---|---|
| **114352 - PREMIER OFFICE TECH INC (57 ALPHA PARK)** | | 57 ALPHA PARK<br>HIGHLAND HEIGHTS<br>OH<br>44143 |
| Classification: MEDICAL SERVICES | | |
| Active: Y | RFQ Only Site: N | |
| Purchasing Site: N | Pay Site: Y | |
| **192965 - PREMIER PAIN CENTERS LLC (160 AVENUE AT T)** | | 160 AVENUE AT THE COMMON STE 1<br>SHREWSBURY<br>NJ<br>07702 |
| Classification: LEGAL | | |
| Active: Y | RFQ Only Site: N | |
| Purchasing Site: N | Pay Site: Y | |
| 192168 - PREMIER PEDIATRICS INC (26040 DETROIT R) | | 26040 DETROIT ROAD STE 7 |

Michelle Rose
Manager, Asthma, Allergy & Immunology
Dr. Kent Knauer
University Hospitals
9000 Mentor Avenue, Suite 103
Mentor, Ohio 44060
Phone: 440-974-4108
Cell: 216-324-5608
Fax: 440-974-4118
**"A person who feels appreciated will always do more then expected"**
*"It is the journey not the destination that makes life interesting and worth the admission price of the one way ticket"*



| MarkView Folder | Scan or Fax | Email | Invoice Number | Invoice Type | Supplier | Supplier Site | Invoice Date | Status |
|---|---|---|---|---|---|---|---|---|
| | | | 1260537 | SSI Invoice | GREER LAB INC | PO BOX 603081 | 15-AUG-2017 | COMF |
| | | | 1261395 | SSI Invoice | GREER LAB INC | PO BOX 603081 | 17-AUG-2017 | COMF |
| | | | 13496 | SSI Invoice | PREMIER OFFICE TECH INC | 57 ALPHA PARK | 18-SEP-2017 | COMF |
| | | | 13465 | SSI Invoice | PREMIER OFFICE TECH INC | 57 ALPHA PARK | 22-AUG-2017 | COMF |
| | | | 009709222017 | SSI Invoice | ANSWERING SVC INC | 5767 MAYFIELD R | 22-SEP-2017 | COMF |
| | | | 90714364 | SSI Invoice | JUBILANT HOLLSTERSTIER LLC | 14110 COLLECTIO | 07-SEP-2017 | COMF |
| | | | 908621916 | SSI Invoice | SANOFI PASTEUR INC | 2% 30 Net 31 | 21-AUG-2017 | PROC |
| | | | 27531-1 2-22-17 | SSI Invoice | FIRST FEDERAL CREDIT CONTROL | 24700 CHAGRIN B | 22-AUG-2017 | COMF |
| | | | 52962 | SSI Invoice | THINKSMART INC | 5890 PACIFIC CE | 01-SEP-2017 | COMF |
| | | | 4680166 | SSI Invoice | EBSCO INDUSTRIES INC | PO BOX 830460 | 09-SEP-2017 | COMF |

Invoices 1421 - 1430 of 1433

135 136 137 138 139 140 141 142 143 144

E-7

# POLICY & PROCEDURE

 University Hospitals

## GOV-7 - Transaction Approval and Authorization

### Key Points:

- This policy establishes who at UH has authority to sign contracts and authorize payments.
- This policy applies to UH and to all of its wholly owned entities.
- This policy can be amended only by the UH Board of Directors, the UH Board Strategic Committee or the UH Board Finance Committee (within its authority).

### Policy & Procedure

1. General Provisions:

   1.1. The UH Board of Directors has ultimate authority for transactions and has delegated certain authority as follows:

      1.1.1. The UH Board of Directors has delegated responsibility for setting approval and signature authority to the UH Finance Committee (within its own authority). The Finance Committee has adopted this policy for that purpose. References in this policy to ratification or approval of the "Committee" refer to the UH Finance Committee. This policy may be amended by the Committee within its authority.

      1.1.2. The UH Strategic Committee has authority to act on behalf of the UH Board and can take any action the Finance Committee and/or UH Board could take. Thus it also has authority to amend this policy or to act under this policy.

      1.1.3. The UH Board, Strategic Committee and/or Finance Committee may authorize another Board Committee, a Board Committee Chair(s), UH Officer(s) or other management to take certain actions in an approved resolution.

   1.2. This policy applies to UH and to all of its wholly owned entities and is intended to ensure that transactions are properly authorized.

   1.3. Management is to adopt appropriate controls regarding transactions and approval processes, including an appropriate segregation of duties.

   1.4. Current transaction approval and signature authorization amounts are set forth in Attachment A to this Policy.

   1.5. For purposes of this Policy and Procedure and Attachment A, Transaction Value means the total amount to be paid under an agreement or other business arrangement, or the total value of a business plan, with the following exception:

      1.5.1. If the Agreement, Business Arrangement (as defined below) or other document contains a written term by which the parties agree that UH may exit the agreement, arrangement or other business transaction with no penalty or other amount due, the Transaction Value may be calculated

based on the greater of one year or the time frame in which UH can exercise its right to terminate without cause. This provision does not include arrangements for a "pilot" or "test" phase; in such cases, the Transaction Value is the amount of the underlying Business Arrangement.

1.6. A transaction or agreement may not be divided or substituted piecemeal to avoid the authority levels in this policy.

1.7. Other applicable policies are to be followed even if there is signature authority. For example, the policies regarding Business Plans, Business Associate Agreements (BAAs) and contract review must be followed when applicable.

2. **Operating Budgets:** All funds used for operation arising from any source are subject to annual operating budgets as approved by the UH Board of Directors (usually in December of the prior year).

2.1. **Business Arrangements involving Operating budgets/amounts (value to be determine as set forth in section 1.5):**

2.1.1. **If an amount, agreement or other transaction with a third party[1] involving only operating dollars (collectively, "Business Arrangement") is included in the annual operating budget approved by the UH Board of Directors, no further approvals by the Board or Committee are needed.** Management need not seek approvals of substitutions of operating dollars for Business Arrangements (to be distinguished from capital dollars for Capital Projects/Business Plans where approvals of certain substitutions are needed as set forth below).

2.1.2. **If an *existing* Business Arrangement requiring operating dollars changed during the year:**

2.1.2.1   **If an existing Business Arrangement requires a new Business Arrangement or an amendment during the year and the change is only for the current year and within the approved budget, the Section 2.1.1 applies.**

2.1.2.2   **If an existing Business Arrangement requires a new contract or other arrangement, or an amendment, during the budget year and the new or amended Business Arrangement exceeds budget in the current budget year, the business owner may request approval of (a) the Chief/President of the business area and (b) the Chief Financial Officer, who may provide approval within the authorization level in Attachment A.**

2.1.2.3   **If an existing Business Arrangement requires a new Business Arrangement or an amendment that extends beyond the current year, the**

---

[1] Internal transaction between and among UH entities do not need approvals. Examples are lease arrangements between UH entities or between a UH entity and an employed physician.

E. 4. 2

Chief/President of the area may request the approval of the Chief Financial Officer if the matter is reasonably expected to be a recurring business expense; the Chief Financial Officer may approve all Business Arrangements in this category within the Authorization Level set forth in Attachment A. Examples of recurring expenses include janitorial services, medical or office supplies.

2.1.2.4  If an existing Business Arrangement requires a new Business Arrangement or an amendment that extends beyond the current year and is not reasonably expected to be a recurring business expense, the following will apply:

| Transaction Value | Approval |
|---|---|
| Value of <$2M | Management at the appropriate authority level |
| Value ≥ $2M and <$5M | Management at the appropriate authority level plus ratification by Committee |
| Value > $5M - $7.5M | Advance approval by the Finance Committee (or, as an alternative the Strategic Committee or Board) |
| Value >$7.5M | Advance approval by the Board or Strategic Committee (when time permits, all such matters to be taken first to the Finance Committee) |

2.1.3.  If the Business Arrangement is *new* and not budgeted:

2.1.3.1  If a new Business Arrangement requires funding only in the current budget year and is within budget, Section 2.1.1 applies.

2.1.3.2  If a new Business Arrangement requires funding only in the current budget year but will exceed the budget in that year, Section 2.1.2.2 applies.

2.1.3.3  If a new Business Arrangement relates to multiple budget years, Section 2.1.2.4 applies.

2.1.4.  If there is not an exception above that is applicable, the approval is to be sought from the Finance Committee or Board. Approval levels are set forth in Attachment A.

E 47.3

2.2.  **Capital budgets/amounts and business plans (including construction):**

2.2.1.  If a capital project with a total value of less than $1,000,000 or a business plan involving capital (regardless of amount) is included in the annual capital budget approved by the UH Board of Directors, no further approvals by the Board or Committee are needed.

2.2.2.  A capital project of $1,000,000 or more requires advance approval of the Finance Committee (or Board as appropriate), if the specific project is not included with the budget per section 2.2.1

2.2.3.  The annual capital budget will identify all individual items in excess of $1 million. All other items will be identified as "other capital budget items" with the aggregate amount of such items noted.

2.2.4.  **Capital budget substitutions:**

2.2.4.1  Items with an approved amount of $100,000 or less will require the authorization of the appropriate executive as set forth in Attachment A and may be substituted at the discretion of management.

2.2.4.2  Items with an approved amount in excess of $100,000 and equal to or less than $1 million will require the authorization of the appropriate executive as set forth in Attachment A to this policy and may be substituted at the discretion of that level of executive.

2.2.4.3  Item with an approved amount in excess of $1 million and less than or equal to $5 million will require the prior approval of the UH Finance Committee.

2.2.4.4  Items with an approved amount in excess of $5 million will require the prior approval of the UH Board of Directors or UH Strategic Committee.

2.2.5.  **Construction Change Orders and Scope changes (i.e., any changes to construction, however titled or called, that changes an amount to be spent in construction).**

2.2.5.1  UH Construction Services will document any changes to scope or construction costs in the project budget. The change(s) are to be approved by the project's sponsor and include the identification of the source of funding for such changes.

2.2.5.2  Once approved by the project sponsor, UH Construction Services will submit the documentation on the changes for review by the UH Finance Department, who will determine whether funding is available.  The Chief Financial Officer will sign the document if funding is available as planned; if not the document will be returned to UH Construction Services.  If returned unsigned, the project may not proceed (or continue, if started) as it is not funded.

2.2.5.3  Once funding is confirmed by the Chief Financial Officer, the documentation is to be forwarded promptly to the Chief Administrative Officer who will review the

documentation and either (a) approve the change and submit for approval to the Finance Committee and/or UH Board if needed or (b) not approve the change and return the documentation to UH Construction Services.  If the Chief Administrative Officer is not available, the UH CEO or the UH President/Chief Operating Officer may approve.  If returned unsigned, the project may not proceed (or continue, if started) as it is not funded.

2.2.5.4  Under all circumstance, the amounts of the Change Orders must be within the amount approved by the Finance Committee or Board.  Any amount that would result in the total project costs exceeding the approval amount must be brought back to the Finance Committee, and, if needed, the Board in advance.

2.3  A decision to change an item from an operating budget to a capital budget (e.g., operating vs. capital lease) will not be considered a capital substitution if the budget is moved from the operating budget to the capital budget.  Any such changes are to be disclosed to the Finance Committee at its next meeting.  Similarly, if an item changes from a capital budget to an operating budget, the same principle applies.

2.4  Management will provide regular reporting to the Finance Committee and Board of Directors on performance against the approved capital and operating budgets.

3.  Whenever "signature" is referred to, the term also shall include a facsimile signature or digital signature of such authorized person.

4.  When a person with signature authority will be absent (e.g., vacation, FMLA), he/she may delegate his/her level of signature authority to another person who is either (a) at the same Authorization Level set forth in Attachment A although in a different department or area; (b) to a direct report who will then have the Authorization Level of the executive who has given the delegated authority; or (c) to a person in the Finance Department with the Authorization Levels set forth above.  For purposes of the period of absence, the designee will then have the Authorization Level of the executive who has given the delegated authority.

4.1  The CEO may delegate to a Level 8 UH Officer.

4.2  Such delegation must be made in writing or on the software for such delegations (e.g., Markview) and set forth a specific period of time; if done by email, the delegation is to be copied to the CFO and the UH Controller.  If a person with signature authority is unexpectedly absent (e.g., hospitalized) and does not have the capability or opportunity to delegate his or her signature authority, the delegation of his or her signature authority may be made by the UH CEO and/or UH CFO. If the UH CEO and/or UH CFO is unexpectedly absent in this manner, the delegation of his signature authority may be made by the Chair of the Finance Committee



5.  **Emergencies:**

3.1.  **An emergency is defined as an unexpected event for which UH could not have planned.**

3.2.  **In an emergency, the Chair and Vice Chair of the Finance Committee may give approval for transactions in amounts not to exceed $7.5M even if the amounts are in separate budget years.  In approving such amounts, the Chair and Vice Chair may impose requirements they deem appropriate. Such action is to be reported to the Finance Committee at its next meeting.**

<u>**See also**</u>
**GM-69 – Contracts**

<u>**Attachment**</u>
**A. Authorization Levels**

## Attachment A

**1. Authorization Levels:** Except as otherwise set forth in this policy, the Authorization Levels are as follows and are based on Contract Value as defined above. The UH Board or authorized UH Board Committee may approve additional persons or amount in a written resolution that is included in the minutes of the meeting.

Note: These levels are not tied to the HR assignment levels and should not be interpreted in that fashion; however, when a specific title is missing, the authority level shall be that provided in the HR tiers. For purposes of clarity, if there is a conflict between HR tier and authorization tier, the authorization tier will govern for purposes signature authority.



| Authorization Level | Authorization Level for Requisitions, Direct Buys & EFTs | Authorization Level for Transaction Values (e.g., Business Arrangements) |
|---|---|---|
| 1 – Staff | N/A | N/A |
| 2 – Supervisors | ≤ $5,000 | N/A |
| 3 – Managers | ≤ $10,000 | N/A |
| 4 - Directors; Division Chiefs at UHCMC Clinical Departments | ≤ $75,000 | N/A |
| 5 – Chairs of UHCMC Clinical Departments; and, Institute leads (however designated by title) | ≤ $300,000 | ≤ $300,000 |
| 6 – Vice Presidents Community Hospital Chief Operating Officers; Other Non-Officer Chiefs at Health Design Plus, Inc. ("HDP"); and, Associate Chief Scientific Officer as to Research agreements only | ≤ $750,000 | ≤ $750,000 |
| 7 – Business Unit Leaders (e.g., hospital presidents, including cancer and children's hospitals)and Direct Reports of Group 8 who hold a title of Chief or President (e.g., Chief Information Officer; Chief Revenue Officer, Chief Operating Officer; Chief Scientific Officer) | ≤ $1,500,000 | ≤ $1,500,000 |
| 8 – UH C-Suite/Direct Reports to the CEO (except as noted for level 9) and UH Chief Administrative Officer CEO or President of Health Design Plus President, Community Hospitals – East/West) | ≤ $4,000,000 | ≤ $4,000,000 |
| 9 — UH CEO and UH CFO (authority may be delegated to Level 8) | ≤ $7,500,000 | ≤ $7,500,000 |

*Handwritten annotations: "See Age 10" (left margin); "My Role" written across rows 2 and 3.*

E- 7.7

1.1 In the event that a position described in the table above is vacant, and a person has been properly appointed to serve in such position on an interim basis pending the determination of a permanent replacement, the person serving in such position on an interim basis shall have the authorization authority of the position for so long as that person continues to serve in that position on an interim basis.

1.2 If a person serves in multiple capacities (e.g., officer of the system and president of a subsidiary), the signature authority is at the highest level of office even when the person is acting in the lower capacity.

1.3 Regardless of title held, any person signing contracts on behalf of UH must be an employee of a UH entity. For example, an independent contractor serving as an interim Vice President cannot sign any contract.

1.4 UH representatives sign contracts only through physical wet ink signatures, or through electronic signatures after appropriate approval (e.g., an attorney in the Law Department or certified contract administrator within his/her authority). UH representatives shall not sign contracts by reason of taking some action other than a physical or electronic signature (e.g., clicking an "I Accept" button on a software license).

2. **Supply Chain Agreements.**

2.1 The following supply chain personnel have authority to sign contracts for products procured by the supply chain/system services only in the amounts set forth below, if such contracts otherwise comply with UH policies (e.g., policy re contract review) and are within the approved budget:

| Authorization Level | Authorization Level for Requisitions, Direct Buys & EFTs | Transaction or Business Arrangement Value |
|---|---|---|
| Supply Chain Contract Administrator | N/A | $\leq$ $50,000 |
| Director responsible for Supply Chain Contract Administration | $\leq$$50,000 | $\leq$ $500,000 |
| Vice President responsible for Supply Chain Contract Administration | $\leq$ 250,000 | $\leq$ $1,000,000 |

E-7.8

3. <u>Contracts</u>

3.1 No contract may be executed for or on behalf of any UH entity unless and until it has been processed in accordance with the UH Policy on contracts (GM-69).

3.2 The following employees are authorized to execute contracts:

3.2.1 On behalf of UH or its wholly-owned entities (including its wholly owned entities and for UH interests in joint ventures):

3.2.1.1 UH Officers appointed by the UH Board of Directors;

3.2.1.2 UH Executives with Authorization Level 7 or above as described in this policy

3.2.1.3 Vice Presidents or above (and within their signature authority) of UH in their business area (e.g., a Vice President in IT can sign for that area within his/her authority)

3.2.2 On behalf of a wholly-owned entity

3.2.2.1 Officers of the Entity (e.g., the Hospital President may execute a contract for that Hospital only and within his/her authorization level).

3.2.2.2 Vice Presidents or above (within their signature authority) of the entity in their business area (e.g., Vice President of Nursing may sign nurse agreements)

3.2.3 The Chief Scientific Officer and the Associate Chief Scientific Officer (in addition to other UHCMC Officers) may approve:

3.2.3.1. Clinical Trial Agreements and other Business Arrangements related only to institutional research, within their signature authority; and

3.2.3.2 Confidentiality and Non-Disclosure Agreements necessary to evaluate clinical trials and other research Business Arrangements at UH only if such agreements do not result in loss of any proprietary or other rights or require a UH employee to disclose proprietary or intellectual property matters of UH (including matters that may result in intellectual property for UH).

3.2.4 Such other UH employees as are granted authority by the UH Board of Directors or by its Committees with delegated authority.

3.3 Certain contracts that do not have specific monetary amounts attached to them and are not addressed elsewhere in this policy require approvals at the following levels:

3.3.1 Academic affiliation agreements and transfer agreements require approval and signature by UH employees with Authorization Level 6 or above.

3.3.2 Confidentiality and non-disclosure agreements whose sole purpose is to require the parties to keep information confidential while a transaction is being negotiated, require approval and signature by UH employees with Authorization Level 7 or above

and then only after review by the Law Department; if a confidentiality agreement or non-disclosure agreement permit or require other actions (e.g., transfer of intellectual property, Section 3.3.3 below applies)

3.3.3 Other non-monetary contracts (e.g., non-binding memorandum of understanding or letters of intent) require approval and signature by UH employees with Authorization Level 7 or above.

3.3.4 Business associate agreements (BAA):

3.3.4.1 Stand-alone BAAs (meaning those not part of a larger contract) for purposes of complying with HIPAA may be signed by persons at Authorization Level 3 or above as long as the agreement (a) follows the current UH BAA template approved by the UH Chief Compliance Officer; or (b) has had a prior review by the UH Chief Compliance Officer, the UH Privacy Officer or their designees; or (c) are approved by an attorney in the UH Law Department.

3.3.4.2 If a BAA is negotiated as part of a larger contracts, the BAA (not the larger contract) may be signed (a) by persons at the Authorization Level of the contract or (b) the Chief Compliance Officer or Privacy Officer.

3.3.4.3 A signed BAA is to be sent to the Privacy Officer within 3 business days of execution.

4 <u>Direct Buy Transactions and Employee Expense Reimbursements.</u>

4.1 Direct Buy Transactions means direct buys and employee expense reimbursements and check requests (SSI).

4.2 Direct Buy requests typically are routed electronically for approval through the management hierarchy of the requestor. Special hierarchies can be implemented to accommodate situations where staff personnel are shared by different managers, or managers support multiple organizations. All special hierarchies need to be approved by the Corporate Finance Director, Financial Services and must comply with the approval policy.

4.2.1 A requestor with at least an Authorization Level 2 can be the first approver in a direct buy transaction.

4.2.2 Direct buy transactions ≤ $1,000 need only one approval from a person with an Authorization Level 3 or above if the approver is not the requestor. If the requestor would normally be the approver, the direct buy must be approved with an Authorization Level 3 by an approver other than the requestor.

4.2.3 Direct buy transactions > $1,000 require 2 approvals, with at least one of the approvals by a person with Authorization Level 3 or above, neither of whom may be the requestor.

4.2.4 Review by manager or above in the Finance Department is required on any SSI (direct buy) transaction greater than $5,000.

4.2.5 In those business (not clinical) areas in which business processes

have been outsourced pursuant to a properly executed contract (e.g., food services), the Corporate Finance Director, Financial Services may authorize an employee of the outsourced service to be granted Authorization Level 2 if such employee is at least a supervisor with responsibility over the area for which the direct buy purchase relates.

4.2.6 Direct Buy Transactions and Employee Expense Reimbursements submitted by the Chief Executive Officer shall be reviewed and approved by the Chief Human Resources Officer or Chief Financial Officer.

4.3 Employee expense reimbursement:

4.3.1 The requestor is required to approve his/her expense reimbursement request prior to submission.

4.3.2 All employee reimbursement requests are electronically routed for approval through the management hierarchy of requestor.

4.3.2.1 All requests requiring a receipt to be attached, need the approval of at least one person, other than the requestor, at Authorization Level 3 or above.

4.3.2.2 Reimbursement requests in which the only items are those that do not require a receipt (e.g., mileage only; expenses less than $25), require 2 approvals from a person, other than the requestor, with Authorization Level 3 or above.

4.4 Any purchases (e.g., purchase orders, direct buy transactions) and that normally would be routed to the Chief Executive Officer for review and approval will be first reviewed by the Corporate Controller as to all the necessary documentation and lower level sign offs. Upon satisfaction that all the necessary documentation and lower level sign offs exist, the Corporate Controller will process the transaction for payment. The documentation for each transaction will be available for the UH CEO's review.

5. **Physician Arrangements:** A transaction involving a physician, physician family member or source of referrals to any UH hospital must be reviewed with the UH Law Department and the UH Compliance & Ethics Office as soon as it is contemplated. The approval process includes review by the UH Law Department in advance of signing and, for purposes of signatures, follows the standard hierarchy set forth in this policy.

6. **Managed Care Contracts.**

6.1 The UH CEO and the Chief Financial Officer (UH CFO) have signature authority for any payor contracts negotiated by the Managed Care Department, regardless of the dollar value of the contract.

6.2 The CFO may delegate signature authority for Managed Care Contracts to an Authorized Designee for a specific time and purpose. An Authorized Designee is a person designated by the CFO in writing; the writing must set forth the scope of such authorization and be copied to the Vice President, Managed Care. No authorization shall be valid unless it complies with

other UH policies (e.g. contract review).  Such authorizations must be maintained with any contract signed by the Authorized Designee.

6.3    To ensure timely execution of contracts, if the UH officers are unavailable and a contract deadline must be met, a managed care contract may be signed by the UH Controller or the UH VP of Managed Care (who are considered Authorized Designees solely for this purpose).

6.4    The following contracts may be executed by the Vice President of Managed Care:

6.4.1    Single case agreements where the reimbursement in the aggregate to all involved UH entities is expected to be less than $500,000

6.4.2    Small Payor Agreements (i.e., Small Payor Agreements shall mean those in which the annual net revenue in the aggregate to all involved UH entities is anticipated to be $2 million or less)

6.4.3    Short term (less than one year) letters of agreement/intent (e.g., a letter of intent to reach agreement for participation in a new product)

6.4.4    Amendments with Small Payor Agreements (as defined above) to extend existing agreements

6.4.5    Amendments with Small Payors to modify rates per escalator provisions in existing agreements

6.4.6    Payor credentialing applications

6.5    All managed care contracts in excess of $5,000,000 must be disclosed to the Finance Committee.

7. <u>Settlement of Claims.</u>

7.1.    The Board has established certain reporting requirements for claims and litigation matters, which it may amend from time to time.  As long as the Board reporting requirements have been met and the settlement is in accord with any insurance company requirements, the following persons have authority to settle claims at any amount within the insurance limit (with notice to appropriate insurers):

7.1.1    The UH CEO, UH CFO and UH CLO on behalf of all UH wholly-owned entities and any person or entity insured through its insurance program, including Western Reserve Assurance Co., Ltd., SPC;

7.1.2    The UHCMC President on behalf of UHCMC and UHMG

7.1.3    The UHMG President on behalf of any physician or physician organization (e.g., UHMG, UHMP) unless a transaction document or insurance policy covering an acquired practice includes a written term expressly stating a different authority.

7.2.    The UH Chief Legal Officer may delegate authority to an attorney in the UH Law Department and/or outside counsel to settle any claim or litigation.

7.3.    A UH attorney may sign a settlement agreement of any amount as long as this procedure is followed.

8. <u>Routine Treasury Transactions.</u>

    8.1.  Routine Treasury Transactions include transactions that have received appropriate approval by UH Officers or the UH Board or Board Committee and are being executed by various means such as operating and capital lease schedules; sale leaseback arrangements, investment related documents, brokerage agreements; purchase and sale of securities/investment related products, bank related accounts, services and products, transfers of funds related to UH accounts, investment management agreements, debt and swap payments, bond trustee payments).

    8.2.  In addition to the UH Officers, the UH VP of Treasury will have signature authority for Treasury Transactions.

    8.3  There must be a segregation of duties for persons executing these agreements (e.g., the requestor may not also be the person signing).

9. <u>Credit application.</u>

    9.1  UH generally does not sign credit applications.

    9.2  The Treasury Department has prepared, and will update as it deems necessary, a memorandum for distribution to vendors requesting UH signature on credit applications.  If, after being provided a copy of the memorandum, a vendor insists on UH signing a credit application, and an acceptable alternative cannot be agreed upon, the UH Vice President responsible for Supply Chain or the UH Chief Administrative Officer have authority to sign credit applications without prior Treasury Department review or approval if the applications do not include any of the following terms:

        9.2.1  Personal guarantees of payment;

        9.2.2  Representations or certifications by the person signing that he/she is an officer or owner of UH;

        9.2.3  Grants of security interests in UH assets;

        9.2.4  Pledges of UH assets as collateral;

        9.2.5  Agreement by UH to terms and conditions beyond those directly related credit or payment; or,

        9.2.6  Limitations on UH disclosure of pricing information to its third party advisers having a need to know such information to properly perform his/her duties to UH.

    Credit applications with any of the above terms must be reviewed and approved by the UH Vice President, Treasury or and his/her absence, his/her designee, prior to execution of the credit application.

10. <u>Utilities:</u>

    10.1  UH does not need advance approval to contract or pay for utilities.

    10.2  Certain utilities offer special deals for utility services based on market pricing.  These offers normally are of very short duration requiring action or loss of the transaction.  At some times, they may extend beyond the budget year.  For these types of agreements, an Executive at Authorization

Level 8 or above may sign the contract if such an agreement would lower the cost to the system (or an entity within the system) even if such agreement would extend into the next budget year.

10.3 The UH Chief Financial Officer and UH Controller are to be advised of this opportunity as soon as possible so that they can review if time permits.

10.4 Such action is to be reported to the Finance Committee at its next meeting if the amount is such as would require a report.



University Hospitals

*Exhibit E-5*

**Corrective Action**

HRPerf001

| I. EMPLOYEE DATA | | | | | |
|---|---|---|---|---|---|
| **First Name** <br> Michelle | | **M.I** <br> M | **Last Name** <br> Rose | | **Employee Number** <br> (Enter exactly as in Oracle) <br> **1121389** |
| **Position** <br> **Practice Lead** | | | | | **Year** <br> **2017** |
| **Entity** <br> UHMP | | | **Department** <br> UHMSO Knauer, Kent-60328 | | |
| *(Check one)* | ☐ Confirmation of Counseling | | ☐ Warning | ☒ Final Warning/Suspension | ☐ Discharge |

**II. CIRCUMSTANCES**

*Dates of attendance or tardiness occurrences:*

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |

*Describe the circumstances leading to the corrective action:*  ✓ wrong date.

Michelle Rose is a Practice Lead and has been with University Hospitals since June 19, 2006.  Michelle has been coached over the past two years by her direct manager and most recently in partnership with Human Resources in relation to her professional behavior, communication style, and proper chain of command.

Michelle has continued to have a very aggressive communication style with many departments and employees throughout UH.  Recently, the Allergy Department was schedule to launch Sorian/PCARM.  Michelle requested a delay for her office due to staffing issues but the launch has already been scheduled and the entire Allergy Department must proceed forward as a group due to business needs.  In an email Michelle stated, "We will not move forward at this time with PCARM."  Similarly, she sends emails that indicate she expects to speak with the person highest up in authority and that if she does not get her way she will go directly to Mr. Zenty.  These communications can be seen as both threatening and insubordinate.  Recently she was disruptive in a Soarian training class that caused class leaders to raise concern about her inappropriate behavior.  Soarian has been live in the Allergy department for a week and since this time due to numerous aggressive communications, Michelle now needs to go through her direct manager for issues and concern versus contacting the help desk.  She has monopolized IT's time directly for her own department needs.

During the month of August 2017, Michelle signed a contract with Premier Office Technologies for transcription services.  Michelle is not a Certified Contract Administrator and did not follow the proper procedure to have a contract reviewed or executed.  Michelle does not have authority to sign a contract and has violated GM-69.  Michelle has gone to multiple sources to request to have the software loaded on her computer.  Despite being told that until any product has been reviewed and approved by IT, an appropriate contract and HIPAA Business Associate Agreement have been properly executed this cannot be done.  Compliance has tried to work with Michelle on this issue but she is unwilling to be guided to the appropriate next steps.  ? 2 months, After the incident?

Due to the numerous concerns listed above and Michelle's aggressive behavior, Michelle is being accelerated to a Final Warning of Corrective Action due to violations in HR-72 and GM-69.  She must conduct herself in a professional manner, specifically in regards to the content and tone of her emails, and act within the scope of her job description.  Continuation of her unprofessional behavior will result in termination from University Hospitals.

*Please note the policy and procedure violated:*

HR – 72 Corrective Action

GM – 69 Contracts

GOV – 7 Transaction Approval and Authorization

### III. ACTION PLAN

Michelle must continue meet with her weekly regarding issues that arise and how best to navigate through them.  She must continue to have thoughtful dialogue with all departments she interacts with.

 **University Hospitals**

Corrective Action

### IV. EMPLOYEE COMMENTS

Employee will not sign until Direct Boss reviews (DR. Kent Knauer) And Also her EEOC attorney who will review this document as well. And have a copy on File.

### V. SIGNATURE OF ACKNOWLEDGMENT

I understand that I may contact an HR representative to discuss questions or concerns related to this document including optional complaint resolution steps. Other than in cases of discharge, should the performance concerns outlined in this document continue, additional corrective action up to and including discharge may occur.

| Employee Signature | Date |
|---|---|
| _Employee Refused to sign_ | |
| Manager Signature | Date |
| | OCTOBER 19, 2017 |

**PLEASE RETURN THIS FORM TO YOUR LOCAL HUMAN RESOURCES DEPARTMENT**

# POLICY & PROCEDURE

 **University Hospitals**

## GM-69 - Contracts

### Key Points

- Contracts[1] are reviewed, managed and documented in accordance with this policy.
- Each business unit/department is responsible for reviewing, managing, documenting and obtaining necessary approvals for its contracts.
- Contracts, with limited exceptions as outlined in this policy, require either UH Attorney or Certified Contract Administrator ("CCA") "approval as to form" prior to being entered into by University Hospitals or any of its entities (collectively "UH").

### Policy & Procedure

1. This policy applies to UH, including employees, medical staff, members of the Board of Directors and any person who has, or believes he/she has, the responsibility and/or authority to enter into contracts on behalf of UH.

2. Contracts are reviewed, managed, documented, and approved in accordance with this policy.

3. Contracts, unless otherwise authorized by a UH Attorney, are:

    3.1. In writing (i.e., not entered into orally);

    3.2. Signed by all parties prior to the contract's effective date;

    3.3. In compliance with applicable UH policies and procedures (the most common UH policies and procedures applicable to UH contracts are cited below);

    3.4. In compliance with any processes and procedures established by the business unit/department responsible for the contract;

    3.5. Initiated through the Oracle Contracts Module Approval Request ("CAR") Process;

    3.6. Uploaded to the Oracle Contracts Module after execution.

4. Contracts comply with applicable federal and state laws and regulations and the UH Code of Conduct. Questions about such compliance are promptly directed to the UH Law Department.

5. For each respective UH business unit/department, UH Senior Leadership has identified one or more individuals to act as Certified Contract Coordinators ("CCCs") and as Certified Contract Administrators ("CCAs"). CCCs and CCAs are trained to assist contract requestors with the CAR Process and to manage contracts for the applicable UH business unit/department. CCCs and CCAs are trained on and have access to the Oracle Contract Module.

6. Any individual who initiates or enters into contracts on behalf of UH is responsible for reviewing and understanding this policy, UH policies and procedures applicable to contracts including, without limitation, the policies referenced below and any other requirements of their business unit/department. Questions regarding this policy or a respective contract are first directed to the requestor's business unit/department CCC.

7. The criteria setting forth the types of contracts that may be approved as to form by a CCA may be modified from time to time by the UH Chief Legal Officer or his/her designee in the UH Law Department and may vary between and among UH entities, business units/departments.  CCA contracting criteria is available on the Contracting Hub of the University Hospitals Legal Service Line Intranet Site found by going to the UH Intranet > About UH System > UH Administration > Legal > Legal Support Services > Contracting Hub.

8. A CCC or CCA reports any violations of this policy or any related contracting policy without fear of retaliation.  A CCC or CCA may report violations of this policy to a UH Attorney designated for his/her area, the Chief Legal Officer, the Chief Human Resource Officer, the Chief Compliance Officer or pursuant to UH Policy CE-4 - Making Compliance and Ethics Reports.

9. To request the review and approval of a contract, a CAR Process is initiated through the Oracle Contracts Module.  If a requestor is not a CCC or a CCA, the requestor contacts a CCC or CCA from his/her UH business unit/department for assistance.  The CAR Process request is routed for approval to UH officers based upon contract type, the UH contracting entity and annual estimated contract value.  UH officer(s) approve the CAR Process request prior to the contract being reviewed or drafted by a UH Attorney or CCA.

10. Coordination by Certified Contract Coordinators.  A business unit/department's CCC is responsible for managing the business unit's/department's CAR Process requests and contracts using the Oracle Contracts Module.  CCCs are listed on the Contracting Hub of the University Hospitals Legal Service Line Intranet Site found by going to the UH Intranet > About UH System > UH Administration > Legal > Legal Support Services > Contracting Hub.  No person without such certification and listing may act as a CCC. To inquire about becoming a CCC or CCA, contact your supervisor for designation and the Senior Legal Administrator Databases in the UHHS Law Department to arrange training.

11. Business Information.  CAR Process Requests include attachments required by applicable UH policy for the applicable contract type.  CAR process requests includes attaching  relevant business terms (if the request is for a UH Attorney to draft the contract) or the 3rd party contract (if the other party has provided its form of contract for use in the transaction) in Microsoft Word format. Incomplete or inaccurate CAR Process Requests are returned requesting more information at any time, even after UH officer approval, and are not  further processed by a UH Attorney or the CCA until needed information is provided or a CAR Process Request is corrected.  CAR Process requests that are returned for additional information are not considered in a contract review request queue and may lose any previously assigned prioritization.

12. <u>Contract Approval</u>.  Contracts, except template contracts and certain contracts initiated by the UH Board of Directors or its committees,[3] are stamped and signed "approved as to form" on the signature page of the contract prior to UH signature. Only UH Attorneys and CCAs may stamp and sign a contract "approved as to form." Contracts appropriately "approved as to form" by a CCA do not require UH Attorney review. CCAs are listed on the Contracting Hub of the University Hospitals Legal Service Line Intranet Site found by going to the UH Intranet > About UH System > UH Administration > Legal > Legal Support Services > <u>Contracting Hub</u>.  No person without such certification and listing may act as a CCA.  CCAs provide review and "approve as to form" only on those contracts meeting CCA contracting criteria. Prior to a CCC "approval as to form" for a contract, the CCC or CCA must complete the Contracting Criteria Checklist Tool, attached as <u>Attachment A</u> to this policy, and upload it to the CAR Process Request in the Oracle Contracts Module.  CCA contracting criteria is on the Contracting Hub of the University Hospitals Legal Service Line Intranet Site found by going to the UH Intranet > About UH System > UH Administration > Legal > Legal Support Services > <u>Contracting Hub</u>.  A UH Attorney indicates "approve as to form" for any contract not meeting the CCA contracting criteria prior to the contract being signed.  Any changes to CCA contracting criteria are first approved by the UH Chief Legal Officer or the Deputy General Counsel for Corporate Legal Services.  No contract "approved as to form" by a UH Attorney or CCA is changed after the stamp is signed unless through a written amendment that complies with this policy. "Approval as to form" stamps includes designation that the approval is specifically by a CCA or a UH Attorney, a signature line for the CCA or UH Attorney, a line for the approver's printed name and a date.

13. <u>Contract Signature and Document Preservation</u>. After the contract is "approved as to form" by the UH Attorney or CCA, as applicable, the CCC is responsible for obtaining required contract signatures and uploading the signed contract and any supporting documentation to the Oracle Contract Module contract record and marking the Oracle Contract Module record as "signed." The CCC maintains hard copies of any original documentation, including the fully executed contract consistent with the UH business unit/department filing procedures and UH policy governing confidentiality of UH proprietary information.

14. <u>Template Contracts</u>.  Template contracts are initiated through the requestor's business unit or department CCC in the same manner as other contracts are initiated through the CAR Process under this policy.  Template contracts are those contracts provided by the UH Law Department on the Contracting Hub of the University Hospitals Legal Service Line Intranet Site found by going to the UH Intranet > About UH System > UH Administration > Legal > Legal Support Services > <u>Contracting Hub</u>.  No other contracts are template contracts.  Use of template contracts follow the instructions on the UH Intranet.  Instructions are on the Contracting Hub of the University Hospitals Legal Service Line Intranet Site found by going to the UH Intranet > About UH System > UH Administration > Legal > Legal Support Services > <u>Contracting Hub</u>.  Template contracts used in accordance with the instructions are not required to be "approved as to form" by a CCA or UH Attorney prior to the CCC obtaining signatures. Prior to submitting a CAR Process Request in the Oracle Contract Module, the CCC or CCA must complete the Contracting Criteria Checklist Tool, attached as <u>Attachment A</u> to this policy, and upload it to the CAR Process Request in the Oracle Contracts Module. Use of template contracts contrary to the applicable instructions[4] for such template contracts are not deemed to be "template contracts" and are "approved as to form" by a CCA or a UH Attorney as provided in this policy.

15. **Miscellaneous**.

15.1.   Information, training materials and tools associated with the UH contract process are available on the Contracting Hub of the University Hospitals Legal Service Line Intranet Site found by going to the UH Intranet > About UH System > UH Administration > Legal > Legal Support Services > Contracting Hub .

15.2.   Access to the Oracle Contract Module is restricted to individuals receiving applicable training and who have acknowledged the confidential and proprietary nature of UH contracts.  Persons accessing UH contract records without a UH business purpose to do so may be subject to corrective action.  Such corrective action may include termination. A list of persons authorized to access the oracle contracts module is maintained by the UH Law and the UH IT&S Departments.

15.3.   Contracts, including template contracts, are signed by a UH authorized representative[2] following the UH policy GOV-7 - Transaction Approval and Authorization.

15.4.   Exceptions to this policy that are not in violation of law may be approved by a UH Attorney. [5]

15.5.   Contracts, including template contracts, are uploaded and managed on the Oracle Contracts Module. It is the responsibility of the applicable business unit's CCC or CCA to upload and maintain the respective contracts of his/her UH business unit/department.

15.6.   Failure to comply with this policy may result in corrective action.  Such corrective action may include termination.

Electronically approved by Tom Zenty - President and CEO of UH - November 2, 2016

Electronically approved by Janet Miller, Chief Legal Officer - November 1, 2016

1   Contract means any type of agreement (written or oral) on any matter between UH and one or more other individuals, legal entities (e.g., corporations, partnerships, joint ventures, limited liability companies) or governmental authorities. Contracts also include any amendments, addenda, modifications, changes, extensions, terminations or further agreements associated with existing contracts. Contracts may be called by different names and, in some cases, only a review of the proposed document or interviews with the persons involved in an oral negotiation may determine whether the writing or oral negotiation may have formed a contract. The following contains examples of contracts and is not exhaustive. Contracts may include, but are not limited to, letters of intent; letter agreements; commitment letters; offer letters that require another party to sign in acknowledgment or acceptance; employment agreements; confidentiality agreements; business associate agreements and other agreements required by the HIPAA Privacy regulations, non-solicitation agreements; non-compete agreements; benefit documents (e.g., pension plan documents); independent contractor agreements; consultant agreements; memoranda of understanding; Medicare and Medicaid agreements; license agreements (e.g., for software, trademarks, patents); leases; mortgages; real estate agreements; options to purchase; purchase agreements, sale agreements; merger agreements; member substitution agreements; contribution and subscription agreements; escrow agreements; purchase orders that contain terms of purchase; architect and construction contracts (including sub-contractor contracts); affiliation agreements (e.g., with nursing or technical schools); loans, indentures; deeds of trust; bonds; security agreements; credit agreement; releases; settlements; compromises; accord and satisfaction agreements; assignment and assumption agreements; bills of sale; waivers; indemnification agreements; guaranties; grants; clinical trial agreements; agreements for any type of services such as medical director services and consulting services; physician recruitment and support agreements; corporate integrity agreements; outside counsel representation agreements; and any other document or other instrument that intends to bind UH to take/not take some action or provide some service. When there is any question as to whether or not a contract is involved, the matter should be brought to the attention of a UH Attorney for clarification. To avoid oral, email or written communications being considered a binding contract, those involved in UH contracting should communicate to such third parties that UH cannot enter into contracts except where it follows this policy.

2   UH authorized representative means an individual with signing authority for the contract's annual value level, in accordance with the UH policy on Transaction Approval and Authorization (Gov-7).

3   The UH Board of Directors, Audit and Compliance Committee, or Compliance Executive Oversight Committee may retain independent auditors or consultants through a contract that is not required to be "approved as to form."

4   For example, negotiated changes to the template contract's terms and conditions other than those specific changes permitted in the template contract's checkboxes, blank or highlighted spaces.

5   For example, a UH Attorney will expedite a contract review prior to completion of the CAR Process at the request of a UH authorized representative when absence of a contract might pose an urgent risk to patient welfare.

**See Also:**

    **UH Code of Conduct**

    **In the UH P&P:**

        **CE-06, Federal Exclusion Lists**
        **CE-08, Conflicts of Interest**
        **CE-17, Transactions with Disqualified Persons**
        **F-8, Leases**
        **F-9, Non-Patient Accounts Receivable & Sponsored Agreements**
        **GM-1, Records Management**
        **GM-21, Intellectual Property**
        **GM-26, Legal Services**
        **GM-45, Audit Services**
        **GOV-7, Transaction Approval and Authorization**
        **HR-7, Non-Physician Independent Contractors Providing Services**
        **HR-72, Corrective Action**
        **IRD-1, Philanthropy Facilitated Through IR&D**
        **IS-8, Information Technology & Solutions (IT&S) Project Approval**
        **PH-11, Business Associate Disclosures of Protected Health Information (PHI)**
        **PH-15, De-Identifying PHI**
        **PH-16, Limited Data Set: Permitted Purposes for Use/Disclosure**
        **PT-1, Agreements with Physicians and Other Referral Sources**
        **PT-2, Medical Director and Other Service Agreements with Physicians**
        **PT-3, Physician Recruitment Activities and Agreements**
        **PT-4, Physician Gifts, Meals, Free CME and Other Business Courtesies**
        **PT-5, Physician Employment**
        **PT-6, Physician Loans and Loan Guaranties**
        **PT-7, Physician Equipment or Space Leases**
        **PT-8, Management Services Agreements Involving Physicians**
        **PT-9, Physician Purchasing Items or Services**
        **PT-10, Physician Access to Vendor Agreements**
        **PT-11, Medical Practice Asset Acquisitions**
        **PT-12, Medical Practice Asset Divestitures**
        **PT-15, Exceptions for Urgent/Emergent Physician Transactions**

## ATTACHMENT A: CONTRACTING CRITERIA CHECKLIST TOOL

Instructions:  Certified Contract Coordinators (CCCs) and Certified Contract Administrators (CCAs) are required to complete this checklist; upload a copy of the signed checklist to the Oracle Contract Authorization Request if the contract meets CCA Contract Criteria under UH Policy GM-69 (Contracts); upload the fully signed contract to the Oracle contract record; and change the Oracle contract status to "signed" to complete the record.

1.  CCA Review and Approval as to Form. This questionnaire is used to assist you in answering the Oracle Contract Authorization Request question "Contract Meets CCA Criteria."  Complete the questions below to determine if a contract may be reviewed and "approved as to form" by a CCA.  If any response is "yes," then the contract may not be "approved as to form" by a CCA and must be reviewed and "approved as to form" by a UH Law Department attorney.  If necessary, please partner with the UH Authorized Representative (the UH officer signing) to complete the questions.

| Evaluation Criteria | Yes | No |
|---|---|---|
| Annual value of contract is greater than $100,000 (including liquidated damages) | ☐ | ☐ |
| Term > 1 year without a ≤90 day without cause termination right by UH after 1ˢᵗ yr | ☐ | ☐ |
| Other party is: | | |
|     Case Western Reserve University (or any of its schools) | ☐ | ☐ |
|     a physician, physician group | ☐ | ☐ |
|     owned by a physician, physician group | ☐ | ☐ |
|     a family member (e.g., wife, child, parent) of a physician | ☐ | ☐ |
|     owned by an close relative (e.g., wife, child, parent) of a physician | ☐ | ☐ |
|     a source of healthcare business or referrals to any UH entity | ☐ | ☐ |
|     owned by a source of healthcare business or referrals to any UH entity | ☐ | ☐ |
|     a recipient of healthcare business or patient referrals from any UH entity | ☐ | ☐ |
|     a UH officer, director, employee or their family member (a UH Party) | ☐ | ☐ |
|     an entity owned/controlled by a UH Party | ☐ | ☐ |
|     an entity having a financial relationship with a UH Party | ☐ | ☐ |
| Contract involves: | | |
|     providing any items/services directly to UH patients | ☐ | ☐ |
|     lease of real property, equipment or vehicles | ☐ | ☐ |
|     a "guarantee" of performance by the UH system parent | ☐ | ☐ |
|     a loan, mortgage or provides a security interest in UH assets | ☐ | ☐ |
|     other party acting as an agent or attorney-in-fact for UH (can bind UH) | ☐ | ☐ |
|     co-branding of trademarks, trade names | ☐ | ☐ |
|     licensing or royalties for UH intellectual property (in whole or in part) | ☐ | ☐ |
|     clinical research or requires Institutional Review Board (IRB) approval | ☐ | ☐ |
|     sale or other dissemination of protected health information of patients | ☐ | ☐ |
|     use of a HIPAA business associate addendum not on UH's form | ☐ | ☐ |
|     Data Use Agreement | ☐ | ☐ |
|     non-standard indemnification/limitation of liability provisions | ☐ | ☐ |
|     non-competition or exclusivity provisions | ☐ | ☐ |
|     patient contact or clinical care (excluding template contracts) | ☐ | ☐ |
|     a release, settlement or purported resolution of a claim or employment separation | ☐ | ☐ |
|     unusual provisions that CCC/CCA believes should receive attorney review | ☐ | ☐ |

If the answer to the previous questions are all "no," the CCC/CCA is to complete #2 below.  If any are "yes" a UH Law Department attorney must "approve as to form" the contract.

2. <u>Policy Review and Certification</u>. CCCs and CCAs must ensure certain UH Policies and Procedures are followed in the UH contracting process.  Confirm below that you have reviewed and have followed the applicable UH Policy.

| Policy | Applicable | |
|---|---|---|
| UH HR-7 Policy (Non-Physician Independent Contractors).   Contracts with individuals and with sole proprietorships (corporations, limited liability companies and other entities with one owner) must be approved by UH Human Resources prior to a contract being entered into.  Contracts with sole proprietorships include contracts with individuals, contracts with an entity comprised of only one person, or a contract with an entity that does work only for UH/UH entity.  Send the contract to HR for evaluation.  HR signature is required indicating review and credentialing requirements have been met prior to execution of contract. | ☐Yes | ☐No |
| UH PH-11 Policy (Business Associates).  Contracts with a person or entity that creates, receives, maintains or transmits patient protected health information for a function or activity on behalf of a UH entity must include a standard Business Associate Agreement signed by the parties.   If the contract involves any type of protected information, including Social Security Numbers, patient and employee personal information, a signature from a Compliance Privacy Officer. | ☐Yes | ☐No |
| UH IA-45 Policy (Audit Services).  Contracts with a person or entity that performs any type of auditing, assurance, analysis or review services, including billing/coding, information technology or forensic services, must be approved by UH Internal Audit prior to a contract being entered into. | ☐Yes | ☐No |

If a UH Policy listed above applies, the CCC/CCA must obtain the approval(s) below prior to submitting an Oracle Contract Authorization Request.  If necessary, the CCC/CCA should partner with the UH Authorized Representative for the contract (the UH officer signing the contract) to obtain the approvals.

Signatures:

UH HR-7:  Human Resources Talent Acquisition Department    _____
                                                                                                        Signature

UH PH-11:  Compliance Privacy Officer                                 _____
                                                                                                        Signature

UH IA-45:  VP, Internal Audit Department                              _____
                                                                                                        Signature

The individual signing below has completed this form and certifies the contract meets CCA Criteria and certifies that the individual has reviewed and complied with UH Policy GM-69 and the UH Policies identified above.

Signature:        _____

Print Name:      _____

Role:              [  ] Certified Contract Coordinator  [  ] Certified Contract Administrator

© 2016 University Hospitals Health System, Inc.