UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------------
: 
MICHELLE ROSE, :
 : CASE NO. 1:20-cv-00132
 Plaintiff, :
 :
 vs. : OPINION & ORDER
 : [Resolving Docs. 31, 39]
UNIVERSITY HOSPITALS :
PHYSICIAN SERVICES, INC., :
 :
 Defendant. :
 :
-------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro se* Plaintiff Michelle Rose brings Family and Medical Leave Act (FMLA) interference, retaliation, and breach of contract claims against her former employer, University Hospitals Physician Services, Inc.[1]

Defendant University Hospitals Physician Services, Inc., filed a motion for summary judgment.[2] Plaintiff Rose opposes.[3]

Defendant also filed a motion to strike[4] certain unsworn arguments and exhibits.[5]

For the following reasons, the Court **DENIES** Defendant's motion to strike and **GRANTS** Defendant's motion for summary judgment.

---

[1] Doc. 20.
[2] Doc. 31, Doc. 38.
[3] Doc. 36.
[4] Doc. 39.
[5] Doc. 36; Doc. 37.

Case No. 1:20-cv-00132
Gwin, J.

## I. Background

Plaintiff worked for Defendant for thirteen years.[6] For the last seven years of her employment, Plaintiff worked "in [a] management" position and "handl[ed] a variety of administrative tasks." Plaintiff Rose helped supervise in a Defendant-affiliated branch office.[7]

On December 20, 2017, Defendant fired Plaintiff,[8] while Rose was on an approved FMLA leave.[9] Defendant says that it terminated Plaintiff because she had acted inappropriately in coworker interactions and violated leave policy.[10]

Plaintiff brings harassment; negligent hiring, supervision, and retention; FMLA interference; FMLA discrimination; "public shame;" breach of contract; and "pain and suffering" claims.[11]

## II. Discussion

### a. Motion to Strike

To begin, the Court denies Defendant's motion to strike[12] certain unsworn arguments and exhibits filed by Plaintiff Rose.[13] Defendant argues that Plaintiff's responses to Defendant's motion for summary judgment include inadmissible evidence and documents. Defendant says Plaintiff's use of this argument and documents goes beyond

---

[6] Doc. 31 at 2.
[7] *Id.* at 4.
[8] *Id.* at 7.
[9] *Id.* at 6–7.
[10] *Id.* at 7.
[11] Doc. 20.
[12] Doc. 39.
[13] Doc. 36 and attachments; Doc. 37 and attachments.

Case No. 1:20-cv-00132
Gwin, J.

the leniency afforded *pro se* plaintiffs.[14] In response to the motion to strike, Plaintiff filed an affidavit attempting to lay a foundation for the documents' consideration.[15]

The Court will allow and consider Plaintiff's filings. Improperly supported documents "may be disregarded on summary judgment,"[16] but the court can still consider the documents or give Plaintiff a chance to support them.[17]

### b. Summary Judgment Standard

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[18] There is a genuine issue of material fact when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19] The Court views all evidence in the light most favorable to the nonmoving party.[20] But, the nonmoving party "must show sufficient evidence to create a genuine issue of material fact"[21] as to each of the claim's required elements.[22] Summary judgment may be granted "[i]f the evidence is merely colorable . . . or is not significantly probative."[23]

---

[14] Doc. 39 at 2.
[15] Doc. 40-1.
[16] *Lloyd v. Midland Funding, LLC*, 639 F. App'x. 301, 304 (6th Cir. 2016).
[17] Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.")
[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted).
[19] *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[20] *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 500–01 (6th Cir. 2007) (citation omitted).
[21] *Id.* (citation omitted).
[22] *Id.* (noting that a scintilla of evidence is not enough to defeat a summary judgment motion).
[23] *Liberty Lobby, Inc.*, 477 U.S. at 250–51.

Case No. 1:20-cv-00132
Gwin, J.

At the same time, Plaintiff is *pro se*. *Pro se* pleadings are liberally construed and held to less stringent standards than counsel-drafted pleadings.[24] The Court reads Plaintiff's filings generously to determine her claims' legal underpinnings.

### c. Plaintiff's Claims

#### i. Harassment Claim

In her Amended Complaint, Plaintiff contends that she was harassed and micromanaged before her firing.[25] Defendant argues that Plaintiff Rose does not give sufficient support for her claim.[26] Defendant says that her claim should fail as a matter of law.[27]

Generalized harassment is not a legal claim. Title VII prohibits discrimination based on someone's race, color, religion, sex, or national origin.[28] Ohio law prohibits "race, color, religion, sex, military status, national origin, disability, age, or ancestry" discrimination.[29] The Americans with Disabilities Act prohibits disability status harassment.[30]

However, Plaintiff does not connect the alleged harassment incidents to her disabled status or any other protected category listed above. Instead, she describes timecard and training issues.[31] She also states that she was "[s]ent for [psychological]

---

[24] *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").
[25] Doc. 20 at 1–2.
[26] Doc. 31 at 9–10.
[27] *Id.* at 9.
[28] 42 U.S.C. § 2000e-2(a).
[29] Ohio Rev. Code Ann. §4112.02(A).
[30] 42 U.S.C. § 12112(a).
[31] Doc. 20 at 1–2.

Case No. 1:20-cv-00132
Gwin, J.

evaluation [to see if she was] fit for duty and it was mandatory."[32] These examples do not sufficiently tie the alleged harassment to her disabled or other protected status.

Moreover, Plaintiff has not shown that these experiences were sufficiently severe to create a hostile work environment under the Americans with Disabilities Act.[33]

A hostile workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment."[34] When determining whether a workplace is hostile, the Court considers the frequency and severity of the allegedly discriminatory events, including whether they are "physically threatening or humiliating, or a mere offensive utterance," and whether they interfered with the employee's work performance.[35] "Offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the 'terms and conditions of employment.'"[36]

The events Plaintiff describes were not severe or pervasive such that they altered the terms of her employment. Plaintiff returned to work following the psychological evaluation,[37] and other managers were held to the same timecard requirements.[38] And

---

[32] Doc. 20 at 1. According to Defendant, "Plaintiff ma[de] a statement about suicide in the workplace and [was] placed on leave to verify her health and safety. . . . Before returning to work following the suicide comment, Plaintiff alleges that she was required to visit with a physician and get a release to return to work." Doc. 31 at 10.

[33] To make a hostile workplace claim based on disability, a plaintiff must show (1) she is disabled; (2) she faced unwanted harassment in the workplace; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) Defendant employer knew or should have known about the harassment and did not take corrective measures. *Trepka v. Bd. of Educ.*, 28 F. App'x. 455, 461 (6th Cir.2002).

[34] *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

[35] *Id.* at 23.

[36] *Sessin v. Thistledown Racetrack, LLC*, 187 F. Supp. 869, 877 (N.D. Ohio 2016) (citing *Hafford v. Seidner*, 183 F.3d 506, 512–13 (6th Cir.1999)).

[37] Doc. 20 at 1.

[38] *Id.* at 1–2.

Case No. 1:20-cv-00132
Gwin, J.

Plaintiff does not explain how a lack of training for her staff amounted to discrimination.[39] Summary judgment is appropriate for Plaintiff's harassment claim.

### ii. Negligent Hiring, Retention, and Supervision Claim

Plaintiff also makes a negligent hiring, retention, and supervision claim.[40] Plaintiff states that Defendant employer promised her support to cover her duties while she took FMLA leave to care for her dying father. Plaintiff claims that Defendant refused to train her staff in the necessary duties. Presumably as a result, she needed to work while on leave.[41] Plaintiff provided emails that appear to contain training and leave coverage discussions.[42] Plaintiff does not state which employee or employees she alleges Defendant negligently hired, retained, and supervised.

In Ohio, the elements for a negligent hiring, retention, and supervision claim include: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining [or supervising] the employee as the proximate cause of plaintiff's injuries."[43]

---

[39] *Id*. at 1.
[40] *Id*. at 2.
[41] *Id*.
[42] Doc. 36-9.
[43] *Evans v. Ohio State Univ.*, 680 N.E.2d 161, 171 (Ohio Ct. App. 1996); *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 678 (Ohio Ct. App. 2015). Quoting the Second Restatement of Agency on negligent hiring, the court in *Evans* explained that "[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: . . . (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others." *Evans*, 680 N.E.2d at 171.

Case No. 1:20-cv-00132
Gwin, J.

Defendant responds that Ohio's Workers' Compensation program bars Plaintiff's negligence claim.[44] Defendant is correct. Under Ohio law, all employers are subject to workers compensation law requirements and must pay workers compensation benefits for covered injuries.[45]

Ohio law grants Workers'-Compensation-compliant employers immunity from other employees' negligence claims.[46]

Plaintiff's claim is barred by Ohio law. In addition, Plaintiff Rose does not show sufficient evidence that Defendant was negligent in any way that proximately caused her injury.

Reading the evidence in the light most favorable to Plaintiff, some emails indicate that Plaintiff's staff was not perfectly trained in a way that they could carry without hitches while Plaintiff Rose was on leave.[47] But that does not mean that Defendant negligently trained Plaintiff's staff. Plaintiff does not show that Defendant was negligent in hiring, training, or retaining any of its employees or that Plaintiff suffered harm because of that negligence. Summary judgment is appropriate on this claim.

### iii. FMLA Interference Claim

Plaintiff claims that Defendant interfered with her first intermittent FMLA leave by forcing her to work while she cared for her dying father.[48] Specifically, she says that her boyfriend would retrieve work from her office and bring it to her at her father's hospital.[49]

---

[44] Doc. 31 at 11–12.
[45] Ohio Rev. Code Ann. § 4123.01(B)(1)(b).
[46] Ohio Rev. Code Ann. § 4123.74.
[47] Doc. 36-2 at 1.
[48] Doc. 20 at 2.
[49] *Id.*

-7-

Case No. 1:20-cv-00132
Gwin, J.

Plaintiff also says that her supervisor emailed her and set Plaintiff's training classes date during her intermittent leave.[50]

Plaintiff claims she took continuous leave.[51] But viewed in totality, the evidence supports a finding that Defendant Rose took intermittent leave.[52] She moved in and out of leave, more often at her own instigation. And Defendant paid Plaintiff when she worked during intermittent periods.[53] In her FMLA certification document, Plaintiff marked a request for both continuous and intermittent leave.[54]

Defendant counters that Plaintiff's FMLA interference claim is time-barred, fails because Plaintiff does not claim damages, and fails on its merits.[55] Defendant does not directly address Plaintiff's allegation that her supervisor required that she attend training while on FMLA leave.

Plaintiff alleges interference while she was on intermittent leave to care for her father.[56] Intermittent FMLA leave means "leave taken in separate periods of time due to a single illness or injury" that can be as short as an hour or as long as a few weeks, as opposed to continuous leave taken in "one block of twelve weeks or fewer."[57] Neither Plaintiff nor Defendant explain any consistent work agreement or pattern.

Although it is not entirely clear from Plaintiff's Amended Complaint, her FMLA interference claim is likely time-barred. An FMLA interference claim must be made within

---

[50] *Id.*
[51] *Id.*
[52] Doc. 36-1 at 5; Doc. 36-6 at 1.
[53] Doc. 31 at 8.
[54] Doc. 36-1 at 2–3.
[55] Doc. 31 at 12–15.
[56] Doc. 36-6 at 1; Doc. 38-2 at 3–7 (showing Plaintiff working while on intermittent leave).
[57] 29 C.F.R. § 825.203(a); *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir. 2005) (citations omitted).

-8-

Case No. 1:20-cv-00132
Gwin, J.

two years of the "last event constituting the alleged violation."[58] Plaintiff filed her suit on December 20th, 2019—two years to the day that Defendant fired her.[59] But Plaintiff's Amended Complaint only alleges FMLA interference with regard to her first leave in late October and early November 2017, when she took intermittent leave to care for her father.[60]

The amended complaint's October and November 2017 claims are barred if subject to a two-year statute of limitations. Plaintiff Rose says FMLA violations were willful and subject to a three-year statute of limitations.[61]

Willful violations of the FMLA receive a three-year statute of limitations.[62] In the Sixth Circuit, "the central inquiry in determining whether a violation of the FMLA is willful is 'whether the employer intentionally or recklessly violated the FMLA.'"[63] In determining whether a violation was willful, a plaintiff's claim cannot be totally conclusory and, "although conditions of a person's mind may be alleged generally, the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face."[64]

Plaintiff does not explicitly contend that Defendant willfully interfered with her leave. However, she asserts that some of Defendant's staff knew she was on continuous FMLA leave but asked her to work anyway.[65] Again, the documentation indicates that she

---

[58] 29 U.S.C. § 2617(c)(1).
[59] Doc. 1-2 at 1.
[60] Doc. 20 at 2.
[61] *Id.*
[62] 29 U.S.C. § 2617(c)(2).
[63] *Crugher v. Prelsnik*, 761 F.3d 610, 617 (6th Cir. 2014) (citing *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 417 (6th Cir.2005)).
[64] *Id.* (citation omitted).
[65] Doc. 36 at 10.

-9-

Case No. 1:20-cv-00132
Gwin, J.

was on intermittent leave during the time she claims interference and her work schedule during that time is not clear.[66]

Even if the statute of limitations does not bar Plaintiff's FMLA interference claim, summary judgment is still appropriate. An FMLA interference claim requires a plaintiff to show

> (1) [s]he is an eligible employee, (2) the defendant is an employer as defined under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of [her] intention to take leave, and (5) the employer denied the employee FMLA benefits to which [s]he was entitled.[67]

Other courts have found that some contact with work is not interference with FMLA leave, particularly where, as here, the employee is paid for their work while on leave.[68] The Sixth Circuit recognized that "[p]erhaps, under certain circumstances, multiple phone calls from an employer and demands to complete more than simple tasks could rise to the level such that an employee's FMLA leave becomes unjustifiably disrupted and thereby discouraged."[69]

Defendant approved each of Plaintiff's requested leaves[70] and reimbursed her for the work that she did while on leave.[71] There is no evidence that the work Plaintiff was

---

[66] Doc. 36-6 at 1.
[67] *Tennial v. U.S. Parcel Service, Inc.* 840 F.3d 292, 308 (6th Cir. 2016).
[68] *See, e.g.*, *Tilley v. Kalamazoo Cty. Rd. Comm'n*, 654 F. App'x. 675, 679–80 (6th Cir. 2016); *Kesler v. Barris, Sott, Denn & Driker, PLLC*, 482 F. Supp. 2d 886, 910–11 (E.D. Mich. 2007).
[69] *Tilley*, 654 F. App'x. at 680 (citing cases where Plaintiffs were repeatedly required to complete tasks and trainings, and where Plaintiff had explained that the work was an impediment to her leave).
[70] *See,* Doc. 36-1; Doc. 36-6.
[71] Doc. 31-2 at 9. *See also* Doc. 38-1 at 36 (October 12, 2017, email asking Plaintiff to "include" the time she read and sent emails while on leave).

Case No. 1:20-cv-00132
Gwin, J.

asked to do and the training she was required to attend on leave interfered with the FMLA leave during the days she was not working.[72]

Beyond Plaintiff's claims, Plaintiff Rose does not show that the November 2017 and December 2017 work resulted from Defendant's demands rather than her own volition.

During this period, Plaintiff Rose received a December 19, 2017, text message reminding her not to work.[73] Plaintiff responds with emails with work colleagues throughout her leaves. Repeating, Rose moved back and forth between work and leave during her intermittent leave.

Rose's emails discuss work issues, but they do not show that her employer required her to work during periods that she gave notice she would be using intermittent leave. The emails do not include urgent requests or demands for her work.[74] Some *Plaintiff*-sent emails show that she continued to work while on leave.[75] These emails do not show that Defendant denied Plaintiff the ability or opportunity to take leave. They do not show that she was forced to work while on leave.

Having failed to show evidence of an intentional violation, the statute of limitations stops Plaintiff's FMLA interference claim. Even if Plaintiff's claim is not time-barred, insufficient evidence shows an FMLA interference in this instance.

### iv. Discrimination Claim

Plaintiff claims that Defendant discriminated against her because of her disabilities. To Plaintiff, the fact that Defendant fired her five days after her doctor advised her to extend

---

[72] Doc. 20 at 2, Doc. 36 at 10–11.
[73] Doc. 36-8 at 3.
[74] *See* Doc. 36-12.
[75] Doc. 36-2; Doc. 36-7 at 1–9; Doc. 36-12.

-11-

Case No. 1:20-cv-00132
Gwin, J.

her FMLA leave another month gives evidence of Defendant's discrimination.[76] Plaintiff also contends that Defendant only fired her after receiving a record of her costly medical treatments.[77] However, no clear evidence shows Defendant received Plaintiff's treatment record or learned that she planned to extend her FMLA leave before firing her.

In addition, Defendant counters that Plaintiff received a final written warning on October 19, 2017, because of her aggressive and threatening communications and inappropriate behavior in training sessions for a new software launch.[78] Defendant fired Plaintiff while she was on leave because her communications did not improve and "caused disruptions" in her workplace.[79]

To establish a disability discrimination in the workplace claim, a plaintiff must show that

> 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.[80]

The Plaintiff's disability "must be a 'but for' cause of the adverse employment action."[81] In other words, Plaintiff would not have been fired if it were not for her disability.

A reasonable jury could not find for Plaintiff on her disability discrimination claim. Summary judgment is appropriate.

---

[76] Doc. 20 at 2–3.
[77] *Id.*
[78] Doc. 38-1 at 33–35.
[79] Doc. 31 at 16.
[80] *Tennial*, 840 F.3d at 306 (citing *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011)).
[81] *Id.* (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012)).

-12-

Case No. 1:20-cv-00132
Gwin, J.

Plaintiff is disabled and receives Social Security Disability Insurance (SSDI) payments.[82] A disability discrimination claim under the Americans with Disabilities Act requires a plaintiff to show that they were qualified for the position—meaning Plaintiff could perform their job duties—with or without accommodation.

Still, a disability discrimination claim is not necessarily incompatible with applying for and receiving SSDI benefits.[83] To survive summary judgment, Plaintiff must provide some explanation for the apparent contradiction between her disabled Social Security status and her ADA argument that she was qualified for the job.[84]

Defendant highlights testimony where Plaintiff, although not entirely clear, agrees that she would not be able to perform her former job because of her disability.[85] Plaintiff acknowledges that she would not be or would not have been able to work her old job with or without accommodation.[86]

More importantly, Plaintiff has not provided evidence that she would not have been fired but for her disability. She also has not shown that the warnings, emails, and her own testimony attributing her firing to intraoffice discord were all pretext for firing her because of her disability.[87]

---

[82] Doc. 31-1 at 10.
[83] *See* *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999); *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 429 (6th Cir. 2014) ("Neither application for nor receipt of social security benefits is by itself conclusive evidence that an individual is completely incapable of working.").
[84] *Id.*
[85] Doc. 31 at 16; Doc. 31-1 at 12.
[86] Doc. 31-1 at 12; Doc. 37 at 5.
[87] *Whitfield*, 639 F.3d at 259.

Case No. 1:20-cv-00132
Gwin, J.

### v. Public Shame Claim

Plaintiff next asserts that she was publicly shamed and that Defendant violated its own policies by firing her using the telephone in her office, which was potentially open to the public.[88] Public shaming is not legal claim.

To the extent Plaintiff sought to make an invasion of privacy claim under Ohio law, summary judgment is appropriate. A reasonable jury could not find that Plaintiff established an invasion of privacy claim.

Under Ohio Law, the invasion of privacy tort can include "the publicizing of one's private affairs with which the public has no legitimate concern."[89] A plaintiff must establish:

> (1) that there has been a public disclosure; (2) that the disclosure was of facts concerning the private life of an individual; (3) that the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) that the disclosure was intentional; and (5) that the matter publicized is not of legitimate concern to the public.[90]

Plaintiff asserts that Defendant's employees intentionally fired her from a speaker phone in an open office, rather than a private room, so that others in the outer office could hear.[91] Plaintiff speculates, but does not provide evidence, that others who may have been in the office could have heard the termination call and that Defendant's employees intended to publicize Plaintiff's firing.[92] There is no evidence, however, that anyone heard

---

[88] Doc. 20 at 3.
[89] *Lunsford v. Sterilite of Ohio, LLC*, -- N.E.3d --, 2020 WL 5033054, at *6 (Ohio Aug. 26, 2020) (citing *Housh v. Peth*, 133 N.E.2d 340 (Ohio 1956)).
[90] *Templeton v. Fred W. Albrecht Grocery Co.*, 72 N.E.3d 699, 701 (Ohio Ct. App. 2017) (citing *Irvine v. Akron Beacon Journal,* No. 20804, 2002 WL 1371184, *4 (Ohio Ct. App. June 26, 2002)).
[91] Doc. 37 at 2.
[92] Doc. 36 at 9.

Case No. 1:20-cv-00132
Gwin, J.

the firing call. In fact, Defendant employee Valerie Jaggie, who made Plaintiff's termination call, testified that the call took place behind a closed door and away from other staff.[93] Plaintiff also does not argue that being fired is a fact concerning her private life.

### vi. Breach of Contract Claim

Plaintiff claims that Defendant breached a contract related to her health insurance benefits after her firing. Plaintiff states that Defendant's employees told her that her benefits would extend through the end of January 2018, but the health insurance benefits did not continue through January 2018.[94]

Defendant maintains that it did provide Plaintiff coverage for January 2018. Further, Defendant's decision to provide Plaintiff with insurance benefits through the month of January was a gift, not an offer or promise that can reasonably be viewed as a contract.[95]

Defendant is correct and summary judgment is appropriate for this claim. A contract requires an offer, acceptance of the offer, and consideration (a bargained-for legal benefit or detriment).[96]

### vii. Pain and Suffering Claim

Finally, Plaintiff's pain and suffering claim appears to be a damages statement rather than a legal claim.[97] Pain and suffering, as Defendant points out, can be an element of a legal claim but is not an independent claim.[98]

---

[93] Doc. 31-2 at 6.
[94] Doc. 20 at 4.
[95] Doc. 31 at 18.
[96] *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002).
[97] Doc. 20 at 4.
[98] Doc. 31 at 18–19. *See also Pain and Suffering*, Black's Law Dictionary (11th ed. 2019).

Case No. 1:20-cv-00132
Gwin, J.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to strike and **GRANTS** Defendant's summary judgment motion.

IT IS SO ORDERED.


Dated:  December 14, 2020               *s/      James S. Gwin*
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE